SNOREK, by Guardian *ad litem,* and another, Plaintiffs, v. BOYLE and others, Defendants and Respondents: HOME MUTUAL INSURANCE COMPANY, Defendant and Appellant.

*October 31—November 27, 1962.*

For the appellant there were briefs by *Byrne, Bubolz & Spanagel,* attorneys, and *William S. Pfankuch,* of counsel, all of Appleton, and oral argument by *Mr. Pfankuch.*

For the respondents there was a brief by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman,* all of Madison, and oral argument by *W. L. Jackman.*

CURRIE, J. The sole issue on this appeal is whether defendant Home Mutual may be directly sued on its policy

of insurance, which it issued to defendants Joyce, before the liability of defendants Joyce to plaintiffs has been determined.

The coverage clause of Home Mutual's policy provides as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof, excepting liability arising out of the ownership, maintenance, or use of additional premises, custom farming, and liability to farm employees, other than exchange labor as defined in this policy."

Among the exclusion clauses of the policy is one which provides that the policy does not apply to "the ownership, maintenance, or use of automobiles including the loading or unloading thereof." The word "automobile" is defined in the policy so as to expressly exclude farm tractors.

The controlling statutes are secs. 204.30 (4) [1] and 260.11 (1), Stats. 1957.[2] This court has held that these two

[1] Sec. 204.30 (4), Stats. 1957, provides: "Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be *in praesenti* or contingent and to become fixed or certain by final judgment against the insured, when caused by the negligent operation, maintenance, use, or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy."

[2] Sec. 260.11 (1), Stats. 1957, provides in part: "In any action [brought by plaintiff on account of any claim against the insured] for damages caused by the negligent operation, management or control of a motor vehicle, any insurer of motor vehicles, which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the

statutes must be considered together. *Smedley v. Milwaukee Automobile Ins. Co.* (1961), 12 Wis. (2d) 460, 465, 466, 107 N. W. (2d) 625. The history underlying the enactment of sec. 260.11 bears this out. Particularly significant is *Morgan v. Hunt* (1928), 196 Wis. 298, 220 N. W. 224, which held valid, under then sec. 85.25, a no-action clause of a policy which prohibited direct action on the policy until the liability of the insured had been determined. The court felt that such a clause did not vitiate the direct liability provided by the statute, but only fixed the time when it could be enforced. The next session of the legislature in 1929 then renumbered sec. 85.25 to be sec. 85.93 and amended it by adding this language: ". . . irrespective of whether such liability be *in praesenti* or contingent and to become fixed or certain by final judgment against the insured." Chs. 454 and 467, Laws of 1929. With this amendment sec. 85.93 assumed the form it now possesses as sec. 204.30 (4). Nevertheless, in *Bergstein v. Popkin* (1930), 202 Wis. 625, 233 N. W. 572, this court held that the statute as amended in 1929 did not permit direct action against an insurer where the policy prohibited direct action until after the liability of the insured had been determined. The opinion pointed to the rejection by the 1929 legislature of a bill which would have created a statute substantially similar to sec. 260.11 so as to permit the insurer to be made a party defendant regardless of whether the insurer's interest was a present interest or a contingent one to become fixed by judgment. The import of the *Bergstein Case, supra,* was that while sec. 85.93

---

prosecution, defense, or settlement of the claim or action of the plaintiff or any of the parties to such claim or action, or which by its policy agrees to prosecute or defend the action brought by the plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action, or agrees to pay the costs of such litigation, is by this section made a proper party defendant."

(now sec. 204.30 (4)) made an insurer directly liable, it needed to be supplemented by a procedural statute which would make the insurer a defendant for direct-action purposes despite the insurer's no-action clause in its policy. Thereafter, the 1931 legislature, by ch. 375, Laws of 1931, amended sec. 260.11 (1) to add the provision which is set forth in footnote 2.

Thus we must look to sec. 204.30 (4), Stats., to determine whether there is direct liability, and to sec. 260.11 to determine whether the insurer may be made a defendant in the action despite a no-action clause in the policy. In keeping with this premise we stated in *Smedley v. Milwaukee Automobile Ins. Co., supra,* at page 465: "Sec. 260.11 refers to an insurer of motor vehicles and contemplates the type of insurance policy referred to in sec. 204.30 (4)." It may be that these two statutes are mutually inclusive though we need not decide that point here.

Home Mutual contends that sec. 204.30 (4), Stats., does not make it directly liable to plaintiffs because the Joyce farm tractor was not described in the policy. This contention is grounded upon the following words of that statute, "when caused by the negligent operation, maintenance, use, or defective construction of the *vehicle described therein* . . . ." (Italics supplied.) In view of the legislative objective in enacting the statute, we do not believe the words "described therein" should be interpreted literally as Home Mutual contends. We cannot believe that the legislature intended the phrase "vehicle described therein" in sec. 204.30 (4) to exclude from the operation of that statute situations in which the policy provides coverage to the insured with respect to substituted vehicles or while driving the vehicle of another. Such an interpretation would unduly limit the remedial purpose of sec. 204.30 (4), which is to permit direct action against an insurer whenever there is coverage under the terms of the policy. Therefore, we con-

clude that if the policy extends coverage to the vehicle involved in a particular accident, then such vehicle is a "vehicle described therein" within the meaning of sec. 204.30 (4). This interpretation of sec. 204.30 (4) makes Home Mutual directly liable to plaintiffs because it is undisputed that its policy did cover the Joyce tractor at the time of the accident.

Home Mutual further contends that its policy is not of the type referred to in sec. 204.30 (4), Stats. It argues that the statute contemplates the type of policy commonly known as an automobile liability policy and not a public-liability policy of the type which it issued to the Joyces to protect them against liability to others arising from the hazards of their farming operations. In support of this contention Home Mutual relies on certain statements made in *Smedley v. Milwaukee Automobile Ins. Co., supra.* The court therein commented that the policy involved was not one covering liability by reason of the operation of a motor vehicle, but instead was an owners', landlords', and tenants' liability policy. A careful reading of the *Smedley Case* shows that its result did not hinge upon the form of the policy, but rather upon the determination that the stationary operation of the crane at the time of the accident was not the operation and control of a motor vehicle within the meaning of sec. 204.30 (4). We are confident that the legislature, in enacting this statute, was not concerned with the type of policy issued. Instead, it intended to provide direct liability if coverage was extended to a self-propelled vehicle operated upon the public highways. Therefore, we hold that the form or type of policy issued is not controlling in determining whether sec. 204.30 (4) applies.

Home Mutual also relies upon a statement made in *Rudolph v. Currer* (1959), 5 Wis. (2d) 639, 642, 94 N. W. (2d) 132, that the legislature has not seen fit to limit the insurer's right to contract "in any other field than that of

automobile liability insurance." We concede that this language does support Home Mutual's contention that its policy, which is in form not an automobile liability policy, lies without the provisions of sec. 204.30 (4), Stats. This statement from the *Rudolph Case, supra,* would have been more accurate had it said that the legislature has not seen fit to limit the insurer's right to contract for a "no-action clause" except when coverage is provided against liability arising from the operation of a motor vehicle.

Home Mutual lastly contends that the Joyce tractor is not a "motor vehicle" within the meaning of both secs. 204.30 (4) and 260.11 (1), Stats. Two bases are asserted in support of this position: (1) Farm tractors are expressly excluded from the definition of "motor vehicle" set forth in sub. (2) (b) of sec. 344.01;[3] and (2) sub. (3) of sec. 204.30, the "omnibus coverage statute," uses the words "automobile" and "vehicle" interchangeably.

The definition of "motor vehicle" set forth in sub. (2) (b) of sec. 344.01, Stats., is found in ch. 344, Stats., which pertains to the Safety Responsibility and Financial Responsibility Acts. See *Laughnan v. Griffiths* (1955), 271 Wis. 247, 256, 73 N. W. (2d) 587. Failure to comply with the requirements of those acts results in the suspension of one's driver's license. Since the operator of a farm tractor on a public highway is not required to have a driver's license, the reason for exclusion of farm tractors from the definition of "motor vehicle" in sec. 344.01 (2) (b) becomes clear. Ch. 344 is included in the Vehicle Code, Title XLIV of the Wisconsin statutes. Sec. 340.01, Stats. 1957, provides: "In chs. 340 to 349, the following words and phrases have the designated meanings unless a different

---

[3] Sub. (2) (b) of sec. 344.01, Stats. 1957, provides: " 'Motor vehicle' means a self-propelled vehicle and also includes trailers and semitrailers designed for use with such vehicles, except that 'motor vehicle' does not include farm tractors, well drillers, or road machinery."

meaning is expressly provided or the context clearly indicates a different meaning:" Sub. (35) of this section defines "motor vehicle" as follows: " 'Motor vehicle' means a vehicle which is self-propelled, including a trackless trolleybus." This definition unquestionably includes a farm tractor. We deem it significant that this broad definition of a motor vehicle, and not the restricted definition of sec. 344.01 (2) (b), is applicable to ch. 346 pertaining to the rules of the road. We conclude that if a definition of a "motor vehicle" is to be imported into secs. 204.30 (4) and 260.11, from the Vehicle Code, it should be that of sec. 340.01 (35), rather than that of sec. 344.01 (2) (b).

While sub. (3) of sec. 204.30, Stats., the "omnibus coverage statute," does use the words "automobile" and "motor vehicle" interchangeably, this does not control the meaning of "motor vehicle" as employed in sub. (4) of sec. 204.30. These two subsections were enacted at different times to achieve different objectives.

One of the rules of statutory interpretation is that words of a statute should be accorded their ordinary and accepted meaning. *State v. Resler* (1952), 262 Wis. 285, 290, 55 N. W. (2d) 35. In *Gridley v. Cardenas* (1958), 3 Wis. (2d) 623, 627, 89 N. W. (2d) 286, we commented that the term "motor vehicle" was in 1937 "commonly used to describe vehicles propelled by motor power on land, of the nature of the automobile, motortruck, and motorcycle." We do not think that the meaning of this term has narrowed in the years since 1937. A farm tractor is also a vehicle "propelled by motor power on land, of the [general] nature of the automobile, motortruck, and motorcycle." We cannot believe that the legislature intended the term "motor vehicle" to have a narrower meaning when used in secs. 204.30 (4) and 260.11 (1), Stats., than when used in ch. 346, Stats., which prescribes the rules of the road to be observed by the operators of tractors while on the highways.

In view of the foregoing, we conclude that a farm tractor while being operated on the public highway is a "motor vehicle" within the meaning of secs. 204.30 (4) and 260.11 (1), Stats.

*By the Court.*—Order affirmed.