(No. 40604.—

CHRISTINE MARCHLIK, Appellant, *vs.* CORONET INSURANCE COMPANY *et al.*, Appellees.

*Opinion filed June 21, 1968.—Rehearing denied Sept. 24, 1968.*

328

WARD and SCHAEFER, JJ., concurring.

BLOCK, LEVY & BECKER, of Chicago, (ALVIN R. BECKER, of counsel,) for appellant.

M. A. HAFT & ASSOCIATES, of Chicago, (SHELDON R. WAXMAN and MORRIS A. HAFT, of counsel,) for appellee Coronet Insurance Company.

BEVERLY AND PAUSE, of Chicago, (FRANK J. PAUSE, of counsel,) for appellee State Farm Mutual Automobile Insurance Company.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing the complaint of plaintiff, Christine Marchlik, against two Illinois insurance companies, Coronet Insurance Company and State Farm Mutual Automobile Insurance Company. Constitutional questions are raised.

Plaintiff, a resident of Wisconsin, was injured when the automobile of Henry Tapio, in which she was riding, was involved in a collision with one driven by Edward Trombley on U.S. Highway 51 in Iron County, Wisconsin. She received hospital and medical care in Wisconsin. Tapio was a resident of Bessemer, Michigan, Trombley was a Wisconsin resident, and the automobile driven by him bore Wisconsin registration. Tapio's liability policy was issued by Coronet and Trombley's by State Farm. Each policy was issued in Illinois, and they contained practically identical "no action" clauses prohibiting direct action against the carrier until final judgment had been entered against the insured.

The action was commenced under the Wisconsin "Direct Action" statutes (Wisc. Stat. 1965, sec. 204.30(4) and sec. 260.11(1),) which authorize original suits against insurance companies provided the injuries are sustained in Wisconsin.

We note at the outset that application of the doctrine of *forum non conveniens* is not an issue. It was raised only obliquely in the motion to dismiss, the trial court specifically refused to make a finding with respect to, or pass upon, application of the doctrine and none of the parties argue it in the briefs.

The issues as stated by the parties are whether the public policy of Illinois precludes direct action against an insurer for tort liability of the insured where the policy has a "no action" clause and when the statutory law of the place where the tort occurs allows direct action and, if so, does the full-faith-and-credit clause of the constitution of the United States force a State to enforce a foreign statute.

The preliminary approach to these issues is whether Wisconsin's direct action statutes are procedural or substantive. If procedural or remedial, it is well settled that the *lex fori*, or law of the jurisdiction in which relief is sought, will govern. (15A C.J.S. Conflict of Laws, sec. 9;

16 Am. Jur. 2d, Conflict of Laws, sec. 76.) On the other hand, the *lex loci delictus* or law of the place of wrong generally governs where the substantive rights of the parties will be affected. But, even this is an over-simplification for, if entertaining a foreign cause (such as this direct action suit against casualty insurers) is contrary to the public policy of the forum, its courts may bar enforcement of the foreign remedy, provided, of course, such a bar is not in contravention of the full-faith-and-credit clause of the Federal constitution.

Section 260.11(1) of the Wisconsin statutes (Wisc. Stat. 1963, sec. 260.11(1),) in pertinent part reads: "A plaintiff may join as defendants * * * any insurer of motor vehicles * * * in any action brought by plaintiff in this state on account of any claim against the insured. The right of direct action herein given * * * shall exist whether the policy of insurance sued upon was issued or delivered in the state of Wisconsin or not and whether or not the policy or contract of insurance contains a provision forbidding such direct action, provided the accident or injury occurred in the state of Wisconsin." Prior to its amendment in 1959 the section was held by the Wisconsin Supreme Court to be procedural. (*Oertel* v. *Williams*, 214 Wis. 68, 251 N.W. 465; *Ritterbusch* v. *Sexsmith*, 256 Wis. 507, 41 N.W.2d 611.) However, we read cases subsequent to the amendment, in which the right of direct action was limited to accidents occurring in Wisconsin, to hold that both sections of the direct action statutes be considered together and that the statutes create a substantive rather than a procedural right. See *Snorek* v. *Boyle*, 18 Wis.2d 202, 118 N.W.2d 132; *Frye* v. *Angst*, 28 Wis.2d 575, 137 N.W.2d 430; *Koss* v. *Hartford Accident and Indemnity Co.* (7th cir.), 341 F.2d 472.

The other section (204.30(4)) reads in part: "Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed

and construed to contain the following conditions: that the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to personal property, irrespective of whether such liability be in praesenti or contingent to become fixed or certain by final judgment against the insured, when caused by negligent operation, maintenance, use or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy."

In commenting on the two sections the Wisconsin court said: "Sec. 204.30(4) is substantive and creates direct liability between the injured third person and the insurer while sec. 260.11(1) is procedural and determines when the insurer can be made a party to the action despite the presence of a no-action clause in the policy." (*Miller* v. *Wadkins,* 31 Wis.2d 281, 283, 142 N.W.2d 855.) While passing on the question of the effect of no-action provisions the Supreme Court of Minnesota in *Kertson* v. *Johnson,* 185 Minn. 591, 242 N.W. 329, held the Wisconsin direct action statute (now sec. 204—30(4)) to be substantive. In *Oltarsh* v. *Aetna Insurance Co.,* (1965) 15 N.Y.2d 111, 204 N.E.2d 622, it was said that the Puerto Rican direct action statute, which resembled section 260.11(1) of the Wisconsin statute, was substantive in character and even though New York had no similar statute the insured injured in Puerto Rico could maintain her action directly against the insurance carrier. Mr. Justice Traynor, speaking for the California court in *Grant* v. *McAuliffe,* 41 Cal.2d 859, 264 P.2d 944, recognized that the courts of that State determine substantive matters by adopting as their law the law of the place where the tortious acts occurred, unless contrary to the public policy of the State. The question of first impression there was whether survival of causes of action was procedural or substantive for conflict-of-laws purposes. It was carefully pointed out that survival statutes do not create a new cause of action and are analogous to statutes of limi-

tations, whereas the wrongful death statutes do create new causes of action and are substantive.

We adopt the view that this direct action statute is substantive and, as such, is entitled to comity, provided there is no compelling public policy of this State to the contrary.

Public policy has been defined as "Judicial decisions, legislation and constitutions as well as customs, morals and notions of justice which may prevail in a state." (Speidel, "Extra-territorial Assertion of the Direct Action Statute: Due process, Full Faith and Credit and the Search for Government Interest, 53 Northwestern U. Law Review 179, 200.) The author in developing the thesis that the direct action statute contravenes Illinois public policy said: "An exclusionary policy which is directed at the nature of the right sought to be enforced and is predicated upon protecting the outcome of litigation from prejudice and error reflects a peculiar local interest * * *. This argument becomes even more compelling when it is realized that the direct action statute is an innovation which has been adopted by only three states [Wisconsin, Louisiana and Rhode Island]. While uniform enforcement in general may be a desirable goal, it should not foist the experimental whims of other states upon the place of trial." (P. 203.) An examination of Illinois law and customs will, we believe, demonstrate that entertaining direct action suits is contrary to a firmly-fixed public policy.

First, while there is no direct legislation prohibiting such actions as in Michigan (*Lieberthal* v. *Glens Falls Indemnity Co.,* 316 Mich. 37, 24 N.W.2d 547), section 25 of the Civil Practice Act (Ill. Rev. Stat. 1967, chap. 110, par. 25(2),) which provided for the filing of a third party complaint, expresses a legislative policy by adding the admonition: "Nothing herein applies to liability insurers or creates any substantive right to contribution among tortfeasors or against any insurer or other person which has not heretofore existed." Section 388 of the Insurance Code (Ill. Rev. Stat.

1967, chap. 73, par. 1000) provides that policies shall contain a privilege for suit against an insurer where the insured becomes insolvent or bankrupt and execution has been returned unsatisfied. These statutory provisions definitely indicate to us a legislative policy against direct actions against insurers before judgment.

In *Pohlman* v. *Universal Mutual Casualty Co.,* 12 Ill. App. 2d 153, section 388 was interpreted as expressing a legislative policy against direct action against insurers until after liability had been established and judgment rendered against an insured. In *Mutual Service Casualty Insurance Co.* v. *Prudence Mutual Casualty Co.,* 25 Ill. App. 2d 429, the appellate court refused to permit the plaintiff company to maintain an action to enforce a repayment of the amount it had to pay under Wisconsin's comparative negligence statute. The decision was based squarely upon the theory that public policy of this State prohibited direct actions against insurers. Plaintiff argues that the *Mutual Service* case was overruled by *Millsap* v. *Central Wisconsin Motor Transport Co.,* 41 Ill. App. 2d 1. It may be noteworthy that the case did not involve an insurer defendant, but in any event the anomalous position taken by one of the parties that public policy rendered unenforceable one Wisconsin statute while seeking enforcement of another could have caused the court to think "a plague on both your houses." Disclosure of liability coverage at a trial against an insured for injuries resulting from his negligence constitutes prejudicial error in this State, contrary to the rule prevailing in Wisconsin. (*Kavanaugh* v. *Parrett,* 379 Ill. 273.) The Wisconsin direct action statute is in direct contravention of no action clauses in policies which are recognized in this State. *Piper* v. *State Farm Mutual Automobile Insurance Co.,* 1 Ill. App. 2d 1.

Foreign substantive law is not, of course, unenforceable as being contrary to public policy just because it differs from our own law, but the differences here are such as to

be against our public policy. Our courts and juries would be hard put to cope with the complex problems posed by other aspects of Wisconsin law if these direct actions are permitted. Wisconsin's lack of a guest statute such as we have, and its interpretation of policy language, would result in confusion and possibly injustice. If this case is entertained by our courts, many more will follow with their attendant appeals. Eventually two bodies of law would be built up, one relating to domestic cases and the other based on our interpretation of Wisconsin law.

Public policy of Illinois precludes the use of our courts as the forum for cases under the Wisconsin direct action statutes and application of the exclusionary rule does not violate the full-faith-and-credit provisions of the Federal constitution.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD, concurring in the result:

The majority say that it would be contrary to the public policy of this State to entertain an action under the Wisconsin statute concerned and that such denial of access to our courts does not violate the full-faith-and-credit provision of the constitution of the United States.

While I agree that this cause should not be entertained in Illinois, I am not fully persuaded that the rationale of the majority is beyond proper challenge. Consider: *Oltarsh* v. *Aetna Insurance Co.,* 15 N.Y.2d 111, 204 N.E.2d 622; *Collins* v. *American Auto Insurance Co.* (2d cir.), 230 F.2d 416; *Hughes* v. *Fetter,* 341 U.S. 609, 95 L. Ed. 1212, 71 S. Ct. 980; *First National Bank of Chicago* v. *United Air Lines,* 342 U.S. 396, 96 L. Ed. 441, 72 S. Ct. 421; *Millsap* v. *Central Wisconsin Motor Transport Co.,* 41 Ill. App. 2d 1; *Swanson* v. *Badger,* 275 F. Supp. 544.

I judge that the complaint and cause should have been

dismissed on the basis of *forum non conveniens*. Under this doctrine a court may, exercising sound discretion, decline to assume jurisdiction of an action brought before it if it deems that the cause may more conveniently and at no sacrifice of full justice be litigated in another court to which it may be brought after the declining court's refusal to entertain jurisdiction.

Circumstances which will cause a court to dismiss a case under *forum non conveniens* cannot be neatly packaged. The Supreme Court in *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839, stated:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy.  *  *  *  If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  *  *  *  The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that

ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

I have no hesitancy in declaring my belief that the defendants here might properly invoke the doctrine. The sole contact, so to speak, of this cause with Illinois is the fact that Coronet and State Farm are Illinois corporations. The plaintiff is a resident of Wisconsin, as is Trombley. The collision which is the basis of the complaint, was in Wisconsin. Tapio is described as a resident of Bessemer, Michigan, which is in the upper Western Peninsula of that State and which is close to Wisconsin. The medical treatment which the plaintiff received was given in Wisconsin. It is clear that none of the persons who normally would be called as witnesses are from this State and their greater inconvenience would be occasioned by their being called to Illinois.

I think it proper to consider, too, that the circuit court of Cook County is congested with litigation having a closer connection to it than the cause here concerned. (*Universal Adjustment Corp.* v. *Midland Bank Ltd.,* 281 Mass. 303, 184 N.E. 152; *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 91 L. Ed. 1055.) According to the records of the Administrative Office of the Illinois Courts there are pending, as of September 30, 1967, 56,287 cases in the law division of the circuit court of the county of Cook and that the average time lapse between the date of the filing of cases and the date of verdict handed down in September, 1967, was

60.6 months. The Administrative Office reports that over 90% of the law cases filed represent personal injury claims and that approximately 95% of verdicts reached in Cook County involve claims for personal injury. It is clear that the judicial system of Cook County is already overburdened and that distant causes, under these circumstances, may not appropriately be entertained there.

It is appropriate, also, to notice that the Statute of Limitations in the State of Wisconsin for personal injury is three years and that there is ample time to allow the plaintiff to institute an action, if she desires, in a court of that State. See *Van Dam* v. *Smit,* 101 N.H. 508, 148 A.2d 289.

The defendants in moving to dismiss the complaints against them did state *inter alia* that Cook County would not be a convenient forum, as one assured resided in Wisconsin and the other in Michigan and the occurrence on which the complaint was based was in Wisconsin and more than 400 miles from Cook County. The trial court found in part that bringing the suit in Illinois under the Wisconsin statute would be contrary to our public policy. The court's order also recited "that this court makes no findings and does not pass in any way upon the defendants' attempt to urge the doctrine of non-conveniens." It is certainly proper for this court to consider a ground relied upon by the defendants and to consider its applicability, for the doctrine may appropriately be recognized even if it has not been adequately pleaded. (*Cf. Burdick* v. *Freeman,* 120 N.Y. 420, 24 N.E. 949.) I concur that the complaint and cause should have been dismissed by the circuit court but I would base it on the ground of *forum non conveniens.*

Mr. JUSTICE SCHAEFER joins in this concurring opinion.