Rosemary PANCOTTO, Plaintiff,

v.

SOCIEDADE de SAFARIS de MOCAMBIQUE, S.A.R.L., a corporation, Defendant.

No. 73 C 3060.

United States District Court, N. D. Illinois, E. D.

Sept. 29, 1976.

406

Karlin & Fleisher, Chicago, Ill., for plaintiff.

Keith L. Davidson, c/o Louis G. Davidson & Assoc., Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

The plaintiff, Rosemary Pancotto, has brought this diversity action to recover damages for a personal injury she sustained in 1973 while on a hunting safari in Mozambique. Pending for decision is the motion of defendant Sociedade de Safaris de Mocambique (Safrique), to apply the law of Mozambique to the substantive issues in the action, and for a determination of the relevant Mozambique law. Defendant has complied with the notice provisions of Fed. R.Civ.P. 44.1. Under the rule of *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court sitting in diversity applies the conflicts law of the state in which it sits. Thus our task regarding the first part of defend-

ant's motion is to determine and apply the Illinois choice of law rule.

Illinois modified its choice of law rules for tort cases in *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). "In our opinion, the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and the parties, in which case, the law of Illinois should apply." *Id.* at 45, 262 N.E.2d at 595.

■ The first step in the choice of law analysis is to isolate the substantive legal issues and determine whether the various states' tort rules conflict. If a potential conflict is discovered, the next step is to examine the contacts with the states, evaluating the importance of each contact in relation to the legal issues of the case. Finally, under the Illinois choice of law rule, the law of the state or country of the place of injury is followed, unless Illinois is more significantly interested in the resolution of a particular legal issue.

## I. The Defendant's Liability

■ Defendant's motion identifies the two substantive legal issues to be addressed by this choice of law analysis, each of which will be considered in turn: (1) the defendant's liability; and (2) the appropriate measure of damages. A cursory look at the defendant's materials outlining Mozambique law indicates that the standard of care there was different from Illinois'.[1] Briefly, the Mozambique standard of care upon which defendant relies was the "diligence with which a law abiding male head of a family would act." Portuguese Civil Code, Art. 487(2). Although this standard of care bears an analytical similarity to Illinois' reasonable man standard, it may be

more or less demanding of an alleged wrongdoer. This putative difference could lead to a different result if Mozambique rather than Illinois law is applied.[2] Consequently, we are faced with a true conflict of laws and must evaluate the parties' contacts with the two states to determine which law should control.

*Ingersoll* refers us to what is now Restatement (Second) of Conflicts of Laws § 145 (1971), for a listing of the contacts to be evaluated in determining which jurisdiction is most significantly concerned with the liability of the alleged tortfeasor. 46 Ill.2d at 47–48, 262 N.E.2d at 596. The first of these is the place where the injury occurred. The parties do not dispute that plaintiff sustained her injuries in Mozambique. Mrs. Pancotto accompanied her husband and sons on a hunting safari directed by defendant. She was taking pictures of other members of the hunting party when a swamp buggy driven by a Safrique employee ran into her.

■ The place of injury has an interest in applying its own tort principles to discourage harmful behavior within its borders. This interest in controlling the tortfeasor's conduct is strongest when the alleged tort is intentional. If the harmful contact is unintentional, however, the interest of the place of injury is attenuated. Realistically, the negligent tortfeasor is not affected by a state's civil liability laws because he does not premeditate before he acts. Nonetheless, to the extent that such conduct is shaped by legal standards, Mozambique was, at the time of the alleged wrong, interested in the choice of the standard of care to be imposed upon the defendant.

The second contact listed in the Restatement is the place of the conduct which

1. At the time of plaintiff's injury in 1973, Mozambique was a territory of Portugal and applied the Portuguese Civil Code. See Affidavit of Marcel Molins. We take judicial notice that Mozambique in 1975 became an independent nation, with its own law. However, to the extent that Mozambique law is controlling, it is the law as it existed at the time of the alleged wrong.

2. Furthermore, Article 503(1) of the Portuguese Civil Code, which we discuss, *infra*, appears to impose liability without fault on those in control of a vehicle used for travel on land. Certainly such a "no-fault" substantive rule could lead to a result different from that presently available under Illinois law.

caused injury, which is again clearly Mozambique. The interest of the jurisdiction where the conduct occurred is similar if not identical to that of the place of injury. Again, however, Mozambique's valid interest in controlling harmful conduct assumes less importance when the alleged tortfeasor was not governed by conscious reference to a behavioral standard.

The Restatement's third contact is the domicile or place of business of the parties. This consideration refers us to both Illinois law and that of Mozambique. The plaintiff's domicile, Illinois, is interested in compensating both the victim and her creditors. Mozambique, on the other hand, as the defendant's domicile and principal place of business, is concerned that defendant's conduct conforms to its standards, and may also have an interest in insulating a domiciliary from liability.

The Restatement's final contact point is the place where the parties' relationship is centered. The relationship here has an international flavor. The safari was arranged in large part by intercontinental telephone calls and cables. In addition, certain employees of the defendant visited the plaintiff's husband in Illinois approximately three times prior to the safari, although the parties dispute the business as opposed to personal significance of the visits. See Plaintiff's Response at 3; Defendant's Reply Brief at A–3 to A–4. Regardless of the nature of the Illinois contacts, they obviously were preparatory to an extended, well-planned interaction in Mozambique. Plaintiff's ultimate presence in that country was hardly fortuitous. *Cf. Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961). In short, although the relationship had international aspects, it can fairly be characterized as centering in Mozambique.

■ These contacts and the state interests evoked by them indicate that both Illinois and Mozambique are interested in the resolution of the liability issue. Both jurisdictions' interests are significant. The numerous Mozambique contacts highlight that government's interest in controlling the conduct of those who take action within its borders, and the interest in affording the protection of its laws to its domiciliaries. Illinois, on the other hand, has a strong interest in seeing that its residents are adequately compensated for tortious injuries. The Illinois interest, although based upon a single contact, cannot for that reason be automatically dismissed as less significant. A contact assumes significance only in view of the legal issue to which it relates. Our evaluation of the contacts indicates that both Illinois and Mozambique are validly interested in the resolution of the issue of defendant's liability, and we hesitate to characterize either jurisdiction's interest as more significant.

■ In general, the Illinois courts have chosen their own law rather than the law of the place of injury only if the majority of the significant contacts were in Illinois, and the tort's occurrence in the foreign state was fortuitous. *See, e. g., Ingersoll, supra; Milton v. Britton*, 19 Ill.App.3d 922, 312 N.E.2d 303 (1st Dist.1974); *Blazer v. Barrett*, 10 Ill.App.3d 837, 295 N.E.2d 89 (2d Dist.1973). Given that both states here may assert significant although distinct interests in the outcome of the liability issue, the Illinois choice of law rule directs the application of the law of the place of injury, Mozambique.

We now turn to a determination of the Mozambique law governing liability for the acts of misconduct alleged in the complaint.

■ Rule 44.1 gives district courts wide discretion in the materials to which they may resort to determine the content of foreign law. The defendant has provided copies of the relevant sections of the Portuguese Civil Code, both in that language and in translation. In addition, defendant offers the affidavit of Mr. Marcel Molins, an expert witness conversant with the law of Portugal, who comments upon the law pertinent to the issues of liability and damages. Regarding liability, these combined resources indicate that Portuguese law sets out two standards for liability, either of which might apply to the facts alleged in

the complaint. The first standard seems to be a rough equivalent, allowing for cultural differences, of the common law reasonable man standard. Under this standard, "[f]ault is judged, in the absence of another legal criterion, by the diligence with which a law-abiding male head of a family would act in the face of the circumstances of each case." Art. 487(2). The injured person carries the burden of proving that the opposing party was at fault as measured by this standard, unless there is a legal presumption of fault. Art. 487.

A second standard may be available, however, under the facts alleged here. As in the United States, in Mozambique liability was sometimes imposed without regard to fault. Under the Portuguese Civil Code this concept is called objective liability, and appears to be theoretically equivalent to our concept of strict liability in tort. W. Prosser, *Torts* 492–540 (4th ed. 1971); *cf.* R. Keeton & J. O'Connell, *Basic Protection for the Traffic Victim* (1965). Under the Portuguese Code, the operation of a land vehicle is considered inherently hazardous. Thus, Art. 503(1) provides that "[o]ne who has effective control of a vehicle for travel on land and uses it for his own purposes or by means of an agent, is chargeable for the damage originating in the risks inherent in the vehicle, even though it is not in movement." A Safrique employee was operating the swamp buggy at the time of Mrs. Pancotto's injury. Mr. Molins admits that the available Mozambique case law does little to clarify the meaning and application of the term "for his own purposes." But, on the record as presently constituted, a fact finder could find that the vehicle was "for travel on land", was under the control of Safrique, and was used "by means of an agent" in which event it would appear that defendant would be liable for risks inherent in the vehicle, *i. e.*, striking a pedestrian.

Without further testimony on the matter, we are not prepared to decide at this time which standard of liability would be applied by a Mozambique court. We also need edification on the question whether the common law reasonable man standard and the

Mozambique "male head of a family" standard are equivalents or whether the latter imposes a greater or lesser standard of care than does the former. Therefore, in preparation for trial the parties are directed to submit supplemental materials addressing these issues.

## II. The Measure of Damages

A brief look at Mozambique's and Illinois' laws on recoverable damages reveals an acute conflict. Illinois permits recovery for medical expenses due to the injury, and, *inter alia*, compensation for the injury itself, for disfigurement, and for pain and suffering. Plaintiff's Brief at 2. In contrast, Art. 508 of the Portuguese Civil Code limits liability for travel accidents to 600 contos, or approximately $6,600 in United States dollars. This limit is not inflexible, however. A Mozambique court may apparently, in its discretion, award damages to the full extent of the plaintiff's out-of-pocket loss, although the typical recovery is less generous. And, under Mozambique law, the plaintiff recovers nothing for pain and suffering, disfigurement, or loss of enjoyment of life as she might under Illinois law.

The defendant argues that the Illinois choice of law rule dictates the application of Mozambique law to this issue also. And, in fact, the analysis of the two jurisdictions' interests in the measure of damages leads to such a result. As the place of conduct, injury, defendant's domicile, and the place where the parties' relationship centered, Mozambique has a strong interest in the resolution of this issue. As plaintiff's domicile and the place where the consequences of the injury are felt, Illinois is concerned that plaintiff receives compensation. Plaintiff, however, contends that the application of Mozambique's damage limitation would be so grossly repugnant to Illinois' public and constitutional policy of providing a remedy for all injuries that an Illinois court would refuse to follow Mozambique law, even if the *Ingersoll* rule would normally dictate its application.

With no Illinois cases in point, the parties discuss certain cases in which the New York courts have faced similar contentions. Of these, *Rosenthal v. Warren*, 475 F.2d 438 (2d Cir. 1973), is the closest factually to the case here. As a federal court sitting in New York, the *Rosenthal* court was concerned with the proper application of New York's choice of law rule, which differs from the Illinois rule.[3] Despite this difference in orientation, *Rosenthal* points out the important factors to consider in determining whether the forum state's public policy should overrule the law of a foreign jurisdiction.

The plaintiff's decedent in *Rosenthal* was domiciled in New York. Accompanied by the plaintiff, his wife and later his executrix, the decedent traveled to Boston for medical treatment by a physician domiciled in Massachusetts. The decedent died while recuperating in a Massachusetts hospital after surgery performed by the physician. The decedent's wife subsequently sued the physician and the hospital in a New York state court.

The defendants argued that the Massachusetts wrongful death statute, with its $50,000 limit on damages, should apply. The court rejected Massachusetts' statute in favor of New York's full compensation policy. Before doing so, the court confronted and thoroughly analyzed the factors militating against the forum's application of its own public policy. First, the court considered whether the defendants had patterned their conduct upon the Massachusetts statute. A doctor does not, however, ordinarily think of wrongful death limitations before performing surgery; consequently the doctor could not claim he acted in reliance upon a Massachusetts behavioral standard. Second, the court considered whether the defendants would be unfairly

surprised by the application of New York law. Neither the doctor nor the hospital had a strictly local clientele or practice. Consequently it could not be said that they justifiably expected to be affected only by Massachusetts law. Third, the court considered whether defendants had purchased insurance in reliance upon the Massachusetts limitation. The defendants' policies, however, made no distinction between recoveries for personal injuries and recoveries for wrongful death. As a result, the defendants could not convincingly argue that they relied upon the Massachusetts limit. Finally, the court evaluated the policy behind the Massachusetts limitation to determine whether application of the New York law would frustrate an important Massachusetts interest. Finding that the few remaining wrongful death limitations are vestiges of the mistaken view that a common law action for wrongful death did not exist, the court declined to apply an archaic and unjust policy, particularly in view of its own policy to assure just and fair compensation for the victims of tortious conduct.

In short, *Rosenthal* indicates that the defendant's reliance, and principles of fundamental fairness and governmental policy should be balanced in determining whether the forum's measure of damages, grounded upon a strong public policy, may be applied against a foreign defendant.

Applying these principles to the factual context here yields some similar conclusions. The tort alleged in the complaint is unintentional, rendering any argument of behavioral reliance untenable. And, as in *Rosenthal*, the defendant here anticipated and welcomed, if not solicited, business contacts with persons outside the jurisdiction. The last two *Rosenthal* considerations, however, are not so easily dismissed. Defendant's counsel has submitted an affidavit

---

**3.** New York employs the "interest analysis" approach to conflicts of law, and applies the law of the jurisdiction which because of its relationship to the parties or the occurrence has the greatest concern with the specific issues raised in the case. *Rosenthal v. Warren*, 475 F.2d 438 (2d Cir. 1973). Applying this rule, the New York courts have attached heavy

weight to their state's vital concern that injured domiciliaries are compensated for their loss. *E. g., Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y. S.2d 734, 237 N.E.2d 877 (1969). In contrast, Illinois follows the approach of the Second Restatement, and applies the law of the place of injury unless Illinois has a more significant interest in the outcome of a specific issue.

attesting that defendant told him it carries no insurance. The competency of this affidavit is questionable as counsel has no personal knowledge of this fact. He has assured us, however, that competent evidence will be forthcoming before trial. *See* 6 J. Moore, *Federal Practice* ¶ 56.11[1.–2], at 56–200 (2d ed. 1976). If we place aside the question of the competency of the affidavit, the lack of insurance suggests that defendant relied upon Mozambique's damage limitation. Moreover, although a New York court can confidently characterize wrongful death limitations as an archaic minority rule, we have no knowledge of the status of damage limitations for personal injury actions in the world community of nations.

Despite these countervailing considerations, our educated prediction is that the Illinois courts would refuse to enforce the Portuguese limitation as unreasonable and contrary to Illinois public policy. Illinois' public policy is found in its Constitution, laws, judicial decisions, and also in its customs, morals, and notions of justice. *Marchlik v. Coronet Ins. Co.*, 40 Ill.2d 327, 239 N.E.2d 799 (1968); *accord, Kabak v. Thor Power Tool Co.*, 106 Ill.App.2d 190, 245 N.E.2d 596 (1st Dist. 1969). There is perhaps no more compelling Illinois public policy than one expressed in the state's Constitution, which provides that every person should find a certain remedy in the law for injuries to his person. Ill.Const. Art. I, § 12. On occasion, the Illinois courts have accepted reasonable limits on recoveries for personal injuries, as for example in the Dram Shop Act and the Wrongful Death Act. Ill.Rev.Stat. ch. 43, § 135; ch. 70, §§ 1, 2 (1973).[4] But as the Illinois Supreme Court noted in its recent decision invalidating Illinois' medical malpractice law, these statutes created actions unknown at common law. Thus, the courts were not disturbed when the newly created right was accompanied by a limited remedy. *Wright v. Central DuPage Hosp. Ass'n*, 63 Ill.2d 313, 347 N.E.2d 736 (1976). But if the right existed at common law, damage limitations without a *quid pro quo* have been disfavored. *Id.* Moreover, the damage limitations incorporated into Illinois legislation have been more consistent with potential out-of-pocket loss. The Dram Shop Act limits damages to $20,000, Ill.Rev.Stat. ch. 43, § 135; the recently voided malpractice act carried a $500,000 limit. See *Wright, supra.*

Of course, we are not dealing here with a law of Illinois, but one from a foreign country. Recently liberated from foreign rule, the economic and social conditions in Mozambique are quite different from those in Illinois. Recognizing such international disparities, the court in *Ciprari v. Servicos Aereos Cruzeiro*, 245 F.Supp. 819 (S.D.N.Y. 1965), applied the Brazilian Code, which limited damages to an amount less than $100. The court, however, emphasized the unique justifications for the limitation, which applied only to accidents involving Brazil's national airline. In particular, the court cited Brazil's public policy of protecting the financial integrity of an infant national industry, and the overtones of national security in Brazil's special interest in the national airline. 245 F.Supp. at 824–25. On the contrary, no exceptional national concern is asserted here. Instead, the damage limitation is general, applying to all injuries sustained in travel accidents. The parties have cited no public policy to be advanced by the law and we hesitate to speculate on the question.

In the absence of an articulated national policy, the final inquiry is whether the application of the Illinois law would unfairly prejudice the defendant. Although the defendant is a Mozambique corporation, its trade is international in scope. Safrique allows travel agencies to use its name in advertisements for sporting magazines with national circulation. See Plaintiff's Brief at 3; Defendant's Reply at A–1. If Safrique induces residents of other countries to visit Mozambique and profits from the ex-

---

4. In respect to wrongful death, the limitation has now been removed. Ill.Rev.Stat. ch. 70, §§ 1, 2 (1975).

**412**

cursions, it is hardly unfair to require Safrique to compensate its clients for tortious injuries inflicted by Safrique employees. Concomitantly, Safrique cannot claim that its clients' residencies take it by surprise. Indeed, Safrique deliberately engages in a business which thrives on international tourism.

A final aspect of the question of prejudice involves counsel's allegation that defendant carries no liability insurance. Safrique's failure to obtain insurance, however, is not alleged to have been motivated by the Mozambique damage limitation. Without supplemental affidavits, this neglect is as easily attributed to oversight as to a calculated business decision that it might cost more in premiums than to directly compensate a victim to the statutory limit.

In conclusion, although the Illinois choice of law rule indicates the application of Mozambique's law to the substantive issues in this action, we feel the Illinois courts would refuse to enforce the Mozambique policy of providing a remedy for personal injuries. Foreign substantive law is not unenforceable simply because it differs from our own law, but because the differences are against public policy. *Marchlik v. Coronet Ins. Co.*, 40 Ill.2d 327, 239 N.E.2d 799 (1968). The refusal to enforce a foreign law should not be lightly made. But when no justification is offered for a policy which contravenes a sound public policy of the forum, and the defendant is not unfairly surprised, we believe that the Illinois courts would decline to apply the foreign limitation.

Defendant's motion to apply the substantive law of Mozambique is granted as to the issue of liability and denied as to the issue of damages. In advance of trial, the parties are directed to submit supplemental memoranda describing the appropriate Mozambique standard of care to be applied to the facts to be proved at trial, and commenting upon the equivalence of the Portuguese "male head of a family" standard of care to the common law reasonable man standard.