**ECC COMPUTER CENTERS OF ILLINOIS, INC., an Illinois corporation, Plaintiff,**

v.

**ENTRE COMPUTER CENTERS, INC., a Delaware corporation, Defendant.**

**No. 84 C 7034.**

United States District Court, N.D. Illinois, E.D.

Nov. 15, 1984.

Ira J. Bornstein, Harvey J. Barnett & Assoc. Ltd., Chicago, Ill., for plaintiff.

William D. Snapp, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Before us in this diversity action is defendant Entre Computer Centers, Inc.'s (Entre) motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3) or, alternatively, to transfer venue under 28 U.S.C. § 1406(a) based on a venue selection provision within a franchise agreement between it and ECC Computer Centers of Illinois, Inc. (ECC). For the reasons hereinafter stated, we find that the venue selection provision is invalid and unenforceable and we, therefore, deny defendant's motion.

On August 15, 1984, ECC filed a six-count complaint. For purposes of Entre's motion to dismiss, we take the allegations in the complaint as true and view them, as well as any reasonable inferences to be drawn from them, in the light most favorable to ECC. *See Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981).

ECC is an Illinois corporation with its principal place of business in Chicago, Illinois. It was formed to be in the business of owning and operating computer stores. Entre, a Delaware corporation with its principal place of business in Vienna, Virginia, is a franchisor of computer stores throughout the country. In late 1983, ECC negotiated with Entre for a computer franchise in Chicago. At that time, Entre had only one computer franchisee in Chicago, located on Wells Street near the Loop. On January 28, 1984, ECC entered into an agreement with Entre whereby a proposed computer store would be located in Chicago and after the franchisor (Entre) approved the store's location, the approved site would be attached as Appendix A to the Franchise Agreement (Agreement). Complaint, Ex. A, ¶ I. When the Franchise Agreement was executed ECC paid $40,000 to Entre as the franchise fee.

After execution of the Agreement, ECC sought a suitable location in the Loop, based upon Entre's verbal representations that the proposed store would be located in downtown Chicago, even though the exact site had not yet been selected. In March, 1984, ECC notified Entre that it had obtained a proposed long-term lease for space in the Chicago Title and Trust Building at Clark and Washington Streets. Soon thereafter, James J. Edgette, Entre's vice president of marketing, informed ECC that it had come to Entre's attention that the existing franchise in downtown Chicago had a two mile radius limit which prevented the establishment of another franchised store without the existing franchisee's written consent. Entre was unable to obtain such consent. Letter from Edgette to Howard Barnett, president of ECC (Mar. 20, 1984). Edgette offered either to rescind the Agreement and refund the $40,-000 fee or to allow ECC to select another site beyond the two mile limit. *Id.*

Subsequently, ECC brought this action against Entre claiming fraud (count I) and seeking actual damages of $130,000 and punitive damages of $750,000, scheme to defraud (count II), negligent misrepresentation (count III), mutual mistake of fact (count IV), breach of contract (count V), and violation of the Illinois Franchise Disclosure Act, Ill.Rev.Stat. ch. 121½, § 701, et seq., (the Act) (count VI).

The Agreement contained a venue selection clause, as well as a statement of applicable law, which provided that (1) the Agreement took effect upon the acceptance and execution by Entre in Virginia; (2) the Agreement would be construed under Virginia law which would prevail in the event of any conflict of law; (3) the parties agreed that any action brought either in state or federal court, "shall be brought within the Commonwealth of Virginia and [the parties] do hereby waive all questions of personal jurisdiction or venue for the purposes of carrying out this provision." Pl. Ex. A (Agreement, ¶ XXII).

The Illinois Franchise Disclosure Act provides that "[a]ny provision in a franchise agreement which designates jurisdiction or venue in a forum outside of Illinois is void with respect to any cause of action which otherwise is enforceable in Illinois." Ill. Rev.Stat. ch. 121½, § 703.1. ECC claims that the effect of this requirement is to render void and unenforceable the venue selection clause of the Agreement. At issue then is whether venue is properly in this Court for purposes of count VI (alleging violation of the Act). If it is, then we must also consider whether the venue se-lection provision should be enforced so that the causes of action alleged in the other five counts need be transferred to Virginia, with Virginia law to be applied.

In urging the enforcement of the contractual venue limitation, Entre claims that federal law, rather than state law, governs enforceability of the provision as it is a procedural matter. *Erie R.R. v. Tompkins*, 304 U.S. 64, 92, 58 S.Ct. 817, 828, 82 L.Ed. 1188 (1938). Alternatively, it argues that even if enforcement of the provision is considered a substantive issue, requiring the application of Illinois law, including Illinois conflict of laws decisions, *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), that law would lead to application of Virginia substantive law which would recognize the validity of the Agreement's venue selection provision.

We need not, however, reach the issue of which should apply: The state law applicable under *Erie*, the Illinois Franchise Disclosure Act, produces the same result as the leading United States Supreme Court decision, *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Although it is not patently clear whether a court sitting in diversity should follow the *Bremen* approach towards forum selection or whether *Erie* mandates application of state law [1], "[s]ince there is no significant difference between the federal and state rule, it is not necessary to choose between them." *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F.Supp. 1140, 1143 (W.D.Va.1979); *Central*

---

**1.** Several courts have held that state law applies on this issue. *See, e.g., Davis v. Pro Basketball, Inc.*, 381 F.Supp. 1 (S.D.N.Y.1974); *Lev v. Aamco Automatic Transmission, Inc.*, 289 F.Supp. 669 (E.D.N.Y.1969); *Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011 (S.D.Va.1976) (assuming without discussion that state law controlled). Other courts have adopted the *Bremen* approach. *See, e.g., C. Pappas Co. v. E. & J. Gallo Winery*, 565 F.Supp. 1015, 1017 (D.Mass. 1983) (the enforcement of forum selection clauses is to be decided under federal law)'; *Richardson Engineering Co. v. International Business Machines Corp.*, 554 F.Supp. 467, 469 and n. 3 (D.Vt.1981); *Cutter v. Scott & Fetzer*

*Co.*, 510 F.Supp. 905 (E.D.Wis.1981); *Dick Proctor Imports, Inc. v. Sumitomo Corp.*, 486 F.Supp. 815, 8181 (E.D.Mo.1980) (venue is a matter of procedure and is governed by federal law); *Taylor v. Titan Midwest Construction Corp.*, 474 F.Supp. 145, 147 (S.D.Tex.1979) (noting that in those cases where state law has been applied, the result under state law was substantially the same as it would have been under federal law); *St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co.*, 401 F.Supp. 927 (D.Mass.1975); *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361 (S.D.N.Y.1975); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 234 n. 24 (6th Cir.1972).

*Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 344–45 (3d Cir.1966).

■ Except in certain circumstances, courts must give effect to freely negotiated forum selection clauses, *Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir.1984), given the realities of commercial dealings and the reasonable expectations of the parties. Nevertheless, "[a] contractual choice-of-forum should be held unenforceable if enforcement *would contravene a strong public policy of the forum* in which suit is brought, whether declared by statute or by judicial decision." *Bremen, supra*, 407 U.S. at 15, 92 S.Ct. at 1916 (emphasis added). Illinois public policy may be found in its judicial decisions, legislation, and construction. *Resorts International, Inc. v. Zonis*, 577 F.Supp. 876, 877 (N.D.Ill.1984), citing *Marchlik v. Coronet Insurance Co.*, 40 Ill.2d 327, 332, 239 N.E.2d 799, 802 (1968).

■ The parties have cited no cases interpreting the venue prohibitions of the Illinois Franchise Disclosure Act, nor have we discovered any. We, therefore, look only to the language of the Act to determine Illinois' public policy with respect to the forum selection clause at issue here, bearing in mind that the party resisting enforcement of the clause bears the burden of proving its unreasonableness. *Clinton v. Janger*, 583 F.Supp. 284, 288 (N.D.Ill. 1984), citing *Bremen, supra; Cruise v. Castleton, Inc.*, 449 F.Supp. 564 (S.D.N.Y. 1978).

The intent of the Act is clearly indicated as follows:

**602. Findings and purpose**

§ 2. Findings and purpose. (1) the General Assembly finds and declares that the widespread sale of franchises is a relatively new business phenomenon which has created numerous problems in Illinois. Illinois residents have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between the franchisor and franchisee, the prior business experience of the franchisor and other factors relevant to the franchise offered for sale.

(2) It is the intent of this Act: (a) to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered for sale; and (b) to protect the franchisee and the franchisor by providing a better understanding of the business and the legal relationship between the franchisor and the franchisee. Ill.Rev.Stat. ch. 121½, § 702. Presumably then, the ban on the enforcement of venue and jurisdiction provisions designating fora outside of Illinois, *id.* at section 703.1, is intended to solve some of the "numerous problems" caused by the sale of franchises in Illinois and to ensure that controversies stemming from such actions will be resolved in Illinois.

In an analogous situation, the Wisconsin Franchise Investment Law prohibited any attempt by the parties to contract out the otherwise applicable Wisconsin law and the District Court held that the law "embodie[d] a public policy of the State of Wisconsin which can best be dealt with by Wisconsin courts." *Lulling v. Barnaby's Family Inns, Inc.*, 482 F.Supp. 318, 321 (E.D.Wis. 1980), citing *Bremen, supra*, 407 U.S. at 15, 92 S.Ct. at 1916 (finding it "unreasonable" to require Wisconsin citizens to litigate their claims based on Wisconsin law in Illinois courts). *See also Cutter v. Scott & Fetzer Co.*, 510 F.Supp. 905, 908–909 (E.D. Wis.1981) (refusing to enforce a forum selection clause as Wisconsin's public policy, enunciated in its Fair Dealership Law, is better interpreted by a Wisconsin court); *Sherman v. Pere Marquette Ry. Co.*, 62 F.Supp. 590, 593 (N.D.Ill.1945) (construing the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*,) ("Venue is a privilege which may not be contracted away in the face of a specific statute which prohibits such contracting. . . .")

Based upon these considerations, we conclude that neither the rationale of *Bremen* nor the venue prohibitions in the Act permit the enforcement of the forum selection clause in the Agreement.[2] Venue of count VI, therefore, is properly in this Court.

The question remaining for consideration is whether Entre's alternate motion to transfer under 28 U.S.C. § 1406(a) should be denied as to the remaining counts. 28 U.S.C. § 1406(a) provides:

**§ 1406. Cure or waiver of defects**

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

By its express terms, this section applies only if venue is in the *wrong* division or district. Such is not the case here, at least with respect to count VI. Even if it were so, the "interest of justice" provisions of section 1406(a), as well as section 1404(a), would work to establish Illinois as the proper and most convenient forum to adjudicate the claims raised in counts I–V, as they arise out of the same set of facts and circumstances as count VI, all of the witnesses, except for Entre's two employees, reside in Chicago, Aff. of Barnett, ¶ 6, Entre availed itself of the protection of Illinois law by complying with certain of the Act's provisions, Def. Reply at 13, certain of the negotiations took place in Illinois, and performance of the contract was to take place in Illinois.

## Conclusion

Defendant's motion to dismiss for improper venue is denied. Its alternate motion to transfer under section 1406 is denied. An appropriate order will enter.

2. We do not reach plaintiff's alternate argument that the forum selection clause, as part of a form contract with boilerplate language was not freely bargained for and is thus unenforceable. We note that some courts have indicated a will-

ingness to consider this factor in a forum selection analysis. *See, e.g., G.H. Miller & Co. v. Hanes,* 566 F.Supp. 305 (N.D.Ill.1983); *Cutter v. Scott & Fetzer Co.,* 510 F.Supp. 905, 908 (E.D. Wis.1981).