# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 08-6052

_____

| | | |
|---|---|---|
| In re: Jeremy Eugene Cleaver, Formerly doing business as JC Auto Repair; Michelle Ann Cleaver, | * * * * | |
| Debtors. | * * | |
| Jeremy Eugene Cleaver; Michelle Ann Cleaver, | * * * | |
| Debtors – Appellants, | * * | Appeal from the United States |
| v. | * * | Bankruptcy Court for the Southern District of Iowa |
| Albert Warford, | * * | |
| Trustee – Appellee, | * * | |
| Kris Earlywine, | * * | |
| Creditor – Appellee. | * | |

_____

Submitted: May 13, 2009
Filed: June 11, 2009

_____

Before KRESSEL, Chief Judge, MAHONEY and VENTERS, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

The debtors appeal an order of the bankruptcy court denying a motion for "reconsideration" of an order denying a motion to avoid a nonpossessory, nonpurchase-money security interest in a semi-tractor truck. Because we hold that lien avoidance is a federal remedy to be determined under federal law, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

Jeremy and Michelle Cleaver borrowed $42,381.93 from Kris Earlywine in early 2008. To secure the loan, the Cleavers granted Earlywine a security interest in their 2000 Kenworth W900B DS Semi-Tractor Truck that they already owned. The Cleavers filed a voluntary bankruptcy petition under chapter 13 on August 12, 2008. They listed the truck as an asset on their Schedule B, valuing it at $21,000.00. They claimed an exemption in the truck on their Schedule C in the amount of $7,000 under Iowa Code § 627.6(9), which provides for the exemption of "The debtor's interest in one motor vehicle, not to exceed in value seven thousand dollars." No one objected to the exemption claim. As a result, the exemption was allowed. 11 U.S.C. § 522(l).

On September 14, 2008, the Cleavers filed a motion to avoid Earlywine's nonpossessory, nonpurchase-money security interest in the truck under 11 U.S.C. § 522(f)(1)(B)(ii). Earlywine did not object to the motion but the trustee, Albert C. Warford, did. A hearing was held on the motion on September 16, 2008, and the bankruptcy court denied the motion in an oral ruling. Consistent with its previous rulings in other cases, the bankruptcy court held that because the debtors could not exempt the truck as a "tool of the trade" under Iowa law, they were not permitted to avoid the lien as a "tool of the trade" under the Bankruptcy Code's lien avoidance provisions. *See Matter of Van Pelt*, 83 B.R. 617 (S.D. Iowa 1987). The court noted that although Iowa courts had not uniformly agreed with the *Van Pelt* decision, the appellate courts had not had occasion to review the issue. The Cleavers filed a motion

2

for relief from the September 16 order denying their motion to avoid Earlywine's lien, and the court denied the motion for relief on November 13, 2008. The debtors appeal.

## Standard of Review

The sole issue on appeal is a question of law, which we review de novo. *DeBold v. Case,* 452 F.3d 756, 761 (8th Cir. 2006); *Green Tree Servicing, LLC v. Coleman (In re Coleman)*, 392 B.R. 767, 769 (B.A.P. 8th Cir. 2008).

## DISCUSSION

The issue on appeal is whether the debtors, who have exempted a motor vehicle under Iowa's exemption statute, are entitled to prove that the vehicle is a tool of the trade under 11 U.S.C. § 522(f)(1)(B)(ii) in order to avoid a nonpossessory, nonpurchase-money security interest in that vehicle. We hold that they are.

The Bankruptcy Code allows debtors to avoid liens on certain property that Congress deemed "necessary to give substance to the concept of a fresh start. This property is required for the maintenance, health and welfare of the debtor and his family, and avoids literal destitution." *Thorp Credit and Thrift Co. v. Pommerer (In re Pommerer)*, 10 B.R. 935, 946 (Bankr. D. Minn. 1981). Congress included "tools of the trade" in a class of property to receive the additional protection of lien avoidance. 11 U.S.C. § 522(f)(1) provides:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> . . .

(B) a nonpossessory, nonpurchase-money security interest in any—

. . .

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor . . . .

"Tool of the trade" is not a term defined in the Bankruptcy Code. It is a term of art. The term also appears in § 522(d)(6), but § 522(d)(6) and § 522(f)(1) do not refer to each other. The Bankruptcy Code's use of this term of art creates conflicts where, as here, a state has concluded that under its exemption scheme vehicles may never be considered tools of the trade, but the federal courts have interpreted the Bankruptcy Code's usage as sometimes extending to vehicles.

Iowa has opted out of the bankruptcy exemption scheme. *See* 11 U.S.C. § 522(b)(2). As a result, a debtor in Iowa is limited to exemptions allowed by Iowa law and federal non-bankruptcy law. The parties agree that, under Iowa law, a motor vehicle may not be exempted as a tool of the trade. The Iowa Supreme Court has held that because the Iowa exemption statute "mentions and classifies separately 'the proper tools, instruments' used in the operation of farm business, and 'the wagon or other vehicle,'" trucks and automobiles "come within the latter classification and must therefore be considered strictly as vehicles, and not as . . . tools." *Farmers' Elevator & Live Stock Co. v. Satre*, 195 N.W. 1011, 1013 (Iowa 1923).

Although Iowa has opted out of the federal exemption scheme, the opt-out only pertains to the specific menu of exemptions to which a debtor is entitled. The Iowa Supreme Court's rulings on the exemption statute's usage of the term "tools of the trade" control for the purpose of determining Iowa debtors' allowable exemptions. However, lien avoidance is a federal remedy to be interpreted by the federal courts. *Heape v. Citadel Bank of Independence (In re Heape)*, 886 F.2d 280, 282 (10th Cir. 1989); *Matter of Thompson*, 750 F.2d 628, 630 (8th Cir. 1984). "Although a state may elect to control what property is exempt under state law, federal law determines

4

the availability of a lien avoidance." *Thompson* at 630; *see also Hart v. Crawford (In re Hart)*, 332 B.R. 439, 444 (D. Wyo. 2005) ("federal law controls exemptions generally and exemption procedures"). "[T]he 'opt out' provision of § 522(b)(2)(A) allows state law to determine only what property may be exempted from the estate." *In re Graettinger*, 95 B.R. 632, 634 (Bankr. N.D. Iowa 1988).

While state law may govern the allowance of an exemption in the first instance, occasionally the Bankruptcy Code modifies some state exemption rights to prevent abuse or overreaching by debtors or creditors. For instance, § 522(b)(3)'s domicile provisions attempt to eliminate any incentive for debtors to move to another state on the eve of bankruptcy in order to protect their assets under more generous exemption statutes. Section 522(o) reduces debtors' homestead exemptions to the extent that the "value is attributable to . . . any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor . . . ." 11 U.S.C. §522(o); *see generally In re Maronde*, 332 B.R. 593 (Bankr. D. Minn. 2005). Section 522(p) places a ceiling on debtors' state law homestead exemptions, where the debtor acquired the homestead within 1,215 days of the petition, and § 522(q) limits the homestead exemption based on certain illegal or unlawful conduct.

Along with limiting exemptions, the Bankruptcy Code offers the remedy of lien avoidance to protect some property that might be essential to a debtor's rehabilitation and fresh start. As expressed in the legislative history, Congress was concerned that a creditor might undermine a debtor's fresh start by acquiring liens in property that the debtor had already purchased and that was essential to the debtor's rehabilitation but not necessarily of real value to creditors:

> Creditors have developed techniques that enable them to avoid the effects of a debtor's bankruptcy, and bankrupts have suffered accordingly. Frequently they come through bankruptcy littler [sic] better off than they were before. Overbroad security interests on all of

a consumer's household and personal goods, reaffirmations, limited state exemption laws, and litigation over dischargeability of certain debts have all contributed to the consumer debtor's post-bankruptcy plight.

H.R.Rep. No. 95-595, at 117, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6077. The legislative history indicates that Congress intended the lien avoidance provisions to protect unsophisticated consumer debtors from overreaching creditors:

> [T]he bill gives the debtor certain rights not available under current law with respect to exempt property . . . . Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.
>
> . . .
>
> Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have.

*Id*. at 6087-6088.

Iowa bankruptcy courts have split[1] on the issue of whether a debtor can exempt

---

[1] As illustrated by this case, the Southern District of Iowa has adopted the position that debtors seeking to avoid liens pursuant to § 522(d) must look to Iowa state law. *Matter of Van Pelt,* 83 B.R. 617 (Bankr. S.D. Iowa 1987) (applying state law and denying lien avoidance on vehicles). The Northern District has held that a debtor may avoid a lien on a vehicle that is a tool of the trade as a matter of federal law even though state law does not allow a debtor to exempt a vehicle as a tool of the trade. *In re Graettinger*, 95 B.R. 632, 634 (Bankr. N.D. Iowa 1988) (applying federal law and granting lien avoidance on vehicle). The *Van Pelt* decision was issued one day before the Northern District avoided a vehicle lien as a tool of the trade. The

a vehicle under state law and avoid the lien as a tool of the trade under federal law, where the vehicle could not be considered a tool of the trade under state law. The fact that an exemption claimed by debtors is in property that is not considered a "tool of the trade" under state law is irrelevant to the issue of whether the lien can be avoided. The Eighth Circuit has adopted a test to determine whether a vehicle is a tool of the trade, and that is: "the reasonable necessity of the item to the debtor's trade or business." *Prod. Credit Assoc. of St. Cloud v. LaFond (In re LaFond)*, 791 F.2d 623, 627 (8th Cir. 1986) (quoting *Seacord v. Commerce Bank of Blue Hills (In re Seacord)*, 7 B.R. 121 (Bankr. W.D. Mo. 1980)).

The plain language of the statute requires the application of federal bankruptcy law to determine whether a lien may be avoided, but if there was any doubt, the Supreme Court resolved it in *Owen v. Owen,* 500 U.S. 305, 111 S. Ct. 1833, 114 L. Ed. 2d 350 (1991). In *Owen*, the Court held that judicial liens encumbering exempt property can be avoided under 11 U.S.C. § 522(f), even "when the State has defined the exempt property in such a way as specifically to exclude property encumbered by judicial liens." *Id*. at 306, 111 S. Ct. at 1834. To determine whether a lien may be avoided under § 522(f), courts should ask whether the lien impairs an exemption to which the debtor would have been entitled but for the lien at issue. The Court concluded that a state's "exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision." *Id*. at 313-14, 111 S. Ct. at 1838. The Court reasoned, "We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains." *Id*. at 313, 111 S. Ct. at 1838. Based on the plain meaning of the statute and the *Owen* decision, we conclude that the language of the statute, "exemption to which the debtor would

---

creditor in *Graettinger* appealed to the district court, which remanded to the bankruptcy court "for the limited purpose of determining the application of *Van Pelt* to these facts." *Graettinger* at 633. On remand, the bankruptcy court declined to follow the *Van Pelt* reasoning, establishing a split that has apparently persisted for over twenty years.

have been entitled under subsection (b)," does not require the exemption to be a "tool of the trade" exemption specifically, but rather *any* exemption under subsection (b) to which the debtor would have been entitled. 11 U.S.C. § 522(f)(1).

## Conclusion

For the reasons stated, we reverse and remand to the bankruptcy court for further proceedings consistent with this opinion. On remand, the debtors are entitled to try to prove that the truck is a tool of the trade as a matter of federal law and that the lien impairs an exemption to which they would otherwise be entitled.

---