In the Matter of James MATTHEWS, Kathy Matthews, Debtors.

No. 10–32356 JPS.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

June 6, 2011.

James M. Green, Kiser & Green, LLC, Loganville, GA, for Debtors.

William Flatau, Katz, Flatau and Boyer, LLP, Macon, GA, for Chapter 7 Trustee.

## ORDER

JAMES P. SMITH, Bankruptcy Judge.

Before the Court is "Trustee's Objection To Debtor's Claimed Exemptions". Trustee's objection came on for hearing on April 26, 2011. The Court, having considered the evidence presented and the arguments of counsel, now issues this order sustaining the objection.

## FACTS

Debtors James and Kathy Matthews have been married for 44 years. They own a twenty-acre tract of land upon which their residence is located. They also own an adjoining eleven-acre tract. Until they retired, they were both employed. The Matthews have traditionally deposited their paychecks and other income into their joint bank account. All of their expenses are paid from this account. Kathy Matthews manages the account and James Matthews seldom writes any checks.

In 2002, the Matthews purchased a 2002 John Deere tractor for about $24,000 to $26,000. James Matthews testified that he and his wife "bought the tractor together" and that his wife was with him when the tractor was purchased. The tractor was paid for using funds from the Matthews' bank account. The Matthews contend that they jointly own the tractor. Although the tractor can be and, in fact, has been driven for short distances on public roads and is insured, it does not have a license tag and its primary purpose is for farming.

Until she retired in 2004, Kathy Matthews was a switchboard operator for a local power company, working 40 hours per week. She testified that she has never driven or used the tractor, that she has worked in the family garden and has picked up pecans, but that she does not "personally farm."

James Matthews owned and was president of Southern Trenching, Inc., which, until it closed, was in the business of installing water lines and meters. He also "farmed on the side". He testified that he is now retired, that he "semi-farms" and that he does some handiwork for neighbors. He testified that he looks to the farm and his handiwork as sources of income. Crops grown on the farm have included wheat, soybeans and milo. James Matthews testified that he will use the tractor to plant grain sorghum this year.

James Matthews farmed in 2010 and received a check in December 2010, for $2,700 to $3,300 from the sale of farm products. However, no farm income was listed on the Matthews' bankruptcy schedules. The Matthews testified that after expenses, there was no net farm income to report.

At the meeting of creditors,[1] James Matthews testified that "I own" the tractor. At the hearing on Trustee's objection, he clarified his position by stating that "I referred to us, the household." He also testified that, at the meeting of creditors, he was distinguishing the Matthews' ownership of the tractor from his business property at Southern Trenching, Inc.

The Matthews filed a Chapter 7 case on December 30, 2010. On Schedule C— Property Claimed As Exempt, they claim the following exemptions in the tractor:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value Of Property Without Deducting Exemptions |
|---|---|---|---|
| 2002 John Deere Tractor | OCGA § 44–13–100(a)(7) | 3,000.00 | 10,000.00 |
| | OCGA § 44–13–100(a)(6) (debtor) [2] | 590.00 | |
| | OCGA § 44–13–100(a)(6) (debtor) | 2,640.31 | |
| | OCGA § 44–13–100(a)(3) (debtor) | 3,500.00 | |

1. 11 U.S.C. § 341(a).

2. On their Schedule C, the Matthews designated Kathy Matthews as "spouse" and James

Matthews as "debtor". Where they intended each debtor to assert an exemption, there was no designation. Thus, with respect to the tractor, each debtor is asserting an exemption

## DISCUSSION

An individual debtor in bankruptcy may claim as exempt certain property of the estate. 11 U.S.C. § 522(b)(1). The State of Georgia has "opted out" of the federal exemption provisions. O.C.G.A. § 44–13–100(b). The exemptions to which a debtor is entitled to claim are set forth in O.C.G.A. § 44–13–100(a). Georgia's exemption statute applicable to the exemptions in the tractor claimed by the Matthews provides in relevant part:

> (a) In lieu of the exemption provided in Code Section 44–13–1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
>
> . . .
>
> (3) The debtor's interest, not to exceed the total of $3,500.00 in value, in all motor vehicles;
>
> . . .
>
> (6) The debtor's aggregate interest, not to exceed $600.00 in value plus any unused amount of the exemption, not to exceed $5,000.00, provided under paragraph (1) of this subsection, in any property;
>
> (7) The debtor's aggregate interest, not to exceed $1,500.00 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor;

O.C.G.A. § 44–13–100(a)(3), (6), (7).

James Matthews claims an exemption in the tractor of $3,500 as a motor vehicle under subsection (a)(3) and $3,230.31 under the "wild card" provision of subsection (a)(6).[3] James and Kathy Matthews each

claim an exemption in the tractor of $1,500 as a tool of the trade under subsection (a)(7). In his objection to the claimed exemptions, Trustee contends that the tractor is not a motor vehicle as that term is used in section 44–13–100(a)(3) and that, as to Kathy Matthews, the tractor is not a tool of the trade under section 44–13–100(a)(7). Trustee does not object to James Matthews' wild card exemption in the tractor.

▆▆▆▆ Trustee, as the objecting party, has the burden of proving that the exemptions are not properly claimed. Fed. R. Bankr.P. 4003(c). Exemption statutes are liberally construed in favor of the debtor. *In re Aldrich,* 403 B.R. 766, 770 (Bankr. M.D.Ga.2009) (Hershner, J.). *See Lampe v. Williamson (In re Lampe),* 331 F.3d 750, 754 (10th Cir.2003); *Caron v. Farmington Nat'l Bank (In re Caron),* 82 F.3d 7, 10 (1st Cir.1996); *Andersen v. Ries (In re Andersen),* 259 B.R. 687, 690 (8th Cir. BAP 2001); *In re Gosnell,* 336 B.R. 133, 136 (Bankr.W.D.Ark.2005).

### 1. *Is the tractor a motor vehicle?*

▆▆▆▆ Trustee contends that James Matthews may not assert an exemption under subsection (a)(3) because a tractor is not a "motor vehicle". The term "motor vehicle" is not defined in the Georgia exemption statute. Further, whether a tractor is a motor vehicle for purposes of the Georgia exemption statute appears to be a matter of first impression.

Trustee relies on the case of *Harris v. State,* 286 Ga. 245, 686 S.E.2d 777 (2009). In that case, the issue was whether a riding lawn mower was a motor vehicle for purposes of the statute punishing theft of a

---

under section 44–13–100(a)(7), but only James Matthews is asserting an exemption under sections 44–13–100(a)(3) and (6).

**3.** Kathy Matthews has claimed her motor vehicle and "wild card" exemptions in property other than the tractor.

motor vehicle. O.C.G.A. § 16–8–12(a)(5)(A). The court noted that the term "motor vehicle" as used in the criminal statute was not defined. Applying the rule of statutory construction that, except for words of art or words connected to a particular trade or subject matter, words should be given their ordinary definition, the court noted that:

> A "motor vehicle" is commonly understood to mean a self-propelled vehicle with wheels that is designed to be used, or is ordinarily used, to transport people or property on roads.

686 S.E.2d at 779. The court then noted that this was how the term was defined in many other Georgia statutes where the term was specifically defined. *Id.* Accordingly, the court held that a riding lawn mower was not a "motor vehicle" for purposes of the criminal statute.

On the other hand, the Matthews rely on the definition of "motor vehicle" as found in "TITLE 40 MOTOR VEHICLES AND TRAFFIC". There, "motor vehicle" is defined as "every vehicle which is self-propelled other than an electric personal assistive mobile device (EPAMD)." O.C.G.A. § 40–1–1(33). However, in the *Harris* case, the Georgia Supreme Court noted that under O.C.G.A. § 40–1–1(59), tractors were included within the definition of "special mobile equipment" and were thus excluded from the more general category of "motor vehicles."

Since the term "motor vehicle" is neither a term of art nor a technical term, the Court finds that, as used in the Georgia exemptions statute, the term should be defined consistent with its commonly understood meaning. Since a tractor is not designed to be used, nor ordinarily used, to transport people or property on roads, the Court finds that a tractor is not a

"motor vehicle" for purposes of O.C.G.A. § 44–13–100(a)(3). Accordingly, Trustee's objection is sustained.

### 2. Is the tractor a tool of the trade as to Kathy Matthews?

At the hearing, Trustee conceded that, due to his farming activities, James Matthews was entitled to claim a $1,500 exemption in the tractor as a tool of the trade pursuant to section 44–13–100(a)(7). However, Trustee objects to a tool of the trade exemption being asserted by Kathy Matthews on the grounds that she has never used the tractor and is not engaged in farming.

In the case of *South Atlantic Production Credit Ass'n. v. Jones (In re Jones)*, 87 B.R. 738 (Bankr.M.D.Ga.1988), Judge Laney interpreted the phrase "tools of the trade" in a lien avoidance dispute under then 11 U.S.C. § 522(f)(2)(B).[4] That provision allows a debtor to avoid nonpossessory, nonpurchase-money security interest in tools of trade. The debtor was seeking to avoid a lien on his farm equipment.

The debtor had farmed for 35 years. Although he was not currently farming, he intended to farm again when he obtained financing and would then need the farm equipment. Judge Laney held that the debtor could exempt the farm equipment and avoid the creditor's lien, stating:

> The first question is whether the Debtor is eligible to exempt his tools and implements as those of his trade. The Debtor's exemption rights are determined on the basis of circumstances existing at the time of filing.... 11 U.S.C. section 522(f)(2)(B) only requires that the Debtor "prove he is legitimately engaged in a trade which currently and regularly uses the specific implements or tools being exempted." The Court is also to consid-

---

**4.** Former section 522(f)(2)(B) is now section 522(f)(*l*)(B)(ii).

er the intensity of the Debtor's past farming activities and the sincerity of his intentions to continue farming. Other sources of income do not prevent a debtor from having the trade of farming for purposes of lien avoidance. For purposes of section 522(f), the Debtor does not have to prove that he meets the [11 U.S.C.] section 101(19) definition of farmer to exempt farm equipment as his tools of the trade. He only need to prove that he is legitimately in the trade using those tools.

86 B.R. at 741 (citations omitted).

At the hearing, Kathy Matthews admitted that she does not personally farm. She has never driven or used the tractor. There is no evidence that the tractor is necessary for any of the work she performs or that she made essential contributions to the operation of the farm. *See In re Indvik,* 118 B.R. 993, 1007–08 (Bankr. N.D.Iowa 1990) (farmer's wife who made no essential contribution to operation of farm was not a farmer and could not claim exemption in farm implements as tools of trade). *See also In re Bryan,* 126 B.R. 108 (Bankr.D.N.M.1991) (doctor's wife who managed husband's office could not exempt medical equipment as tools of trade; only the debtor who uses the tools can claim the exemption). Accordingly, the Court concludes that the tractor is not a tool of the trade as to Kathy Matthews and Trustee's objection is sustained.

### CONCLUSION

With respect to James Matthews' $5,000 interest in the tractor[5], he may use his $3,230.31 "wild card" exemption under O.C.G.A. § 44–13–100(a)(6). He may also assert his $1,500 tool of trade exemption under O.C.G.A. § 44–13–100(a)(7). Trustee's objection to James Matthews' asserting a motor vehicle exemption of $3,500 under O.C.G.A. § 44–13–100(a)(3) is sustained. Trustee's objection to Kathy Matthews' asserting a $1,500 tool of trade exemption under O.C.G.A. § 44–13–100(a)(7) is also sustained.

---

**5.** As asserted, James Matthews' exemptions exceeded his $5,000 undivided interest in the tractor. However, because the Court has ruled that James Matthews may not claim a $3,500 "motor vehicle" exemption, the issue of his attempting to exempt more than his interest is moot.