**In re Darrell L. WOLLER and Rita M. Woller, Debtors.**

No. 11–14298–7.

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 16, 2012.

**890**

George B. Goyke, Esq., Goyke, Tillisch & Higgins, LLP, Wausau, WI, for Debtors.

Christopher M. Seelen, Esq., Ruder Ware, Eau Claire, WI, for Trustee.

### ORDER

THOMAS S. UTSCHIG, Bankruptcy Judge.

Darrell and Rita Woller filed this case in July of 2011. Darrell is an over-the-road truck driver while Rita works for Regal Beloit Corporation. They struggled financially for a number of years before finally filing bankruptcy. Rita's wages were periodically garnished and she sold some real estate to help support their family. In their schedules the Wollers utilized the Wisconsin exemption statute and claimed various items as exempt. The chapter 7 trustee has objected to their exemption claims for the following items: a semi-tractor valued at $15,000.00, a bank account with a scheduled value of $2,175.00, a retirement annuity of about $49,000.00, and $3,567.06 in income from Darrell's trucking operation. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052,

as applicable in a contested matter under Fed. R. Bankr.P. 9014(c).

Wis. Stat. § 815.18(3) provides specific exemptions for various categories of property. Some provisions contain specific maximum dollar amounts which may be claimed, while others are only restricted by perceptions of what might be "reasonably necessary" for the support of the debtor or the debtor's dependents. The statute also provides that spouses are each allowed to claim an exemption and they may combine their exemptions together, effectively doubling the exemption amounts in joint cases. *See* Wis. Stat. § 815.18(8). These provisions are supposed to be liberally construed so that they "secure their full benefit to the debtor." *See* Wis. Stat. § 815.18(1): *Opitz v. Brawley*, 10 Wis.2d 93, 95–96, 102 N.W.2d 117, 119 (Wis.1960) (citing *Julius v. Druckrey*, 214 Wis. 643, 649, 254 N.W. 358, 361 (Wis.1934)). At the same time, the right to an exemption is a creation of statutory law and courts should not extend exemptions beyond what is embraced in the statute. *Northwest Bank & Trust Co. v. Minor*, 275 Wis. 516, 82 N.W.2d 323, 324 (Wis.1957): *see also Schwanz v. Teper*, 66 Wis.2d 157, 164, 223 N.W.2d 896, 900 (Wis.1974) ("While it is true that the ... exemption statute is to be liberally construed, the principles of liberal construction cannot be employed to write exemptions into the statutes.").

Essentially, proper construction of the exemption statute requires both an interpretative generosity in favor of the debtors and a simultaneous recognition that the statute reflects a legislative choice to protect certain assets at the expense of others. The Wisconsin Constitution provides the legislature with "broad discretionary powers" to create exemptions for the benefit of debtors. *See* Wis. Const. art. I, § 17: *see also North Side Bank v.*

*Gentile,* 129 Wis.2d 208, 385 N.W.2d 133, 138–39 (Wis.1986). As this Court has observed previously, the exemption statute contains certain inherent inequalities which reflect the legislature's perspective as to which assets it believes debtors should be able to protect from the claims of creditors. *See In re Lark,* 438 B.R. 652, 657 (Bankr.W.D.Wis.2010) ("A debtor who does not own a home cannot access the state's homestead exemption. A debtor without a pension cannot utilize the exemption for retirement benefits. And so on."). It is not the Court's place to second-guess, whether it be the existence of an exemption or the absence of one. *In re Bruski,* 226 B.R. 422, 425 (Bankr.W.D.Wis. 1998): *see also In re Thompson,* 867 F.2d 416, 421 (7th Cir.1989) (limiting Wisconsin exemption through application of the federal definition of "tools of the trade" would exceed the "prudential limits on judicial rewriting of statutes").

The trustee indicated that he did not believe an evidentiary hearing was necessary to support his objection and the parties submitted the matter to the Court on briefs and stipulated facts. As bankrupt debtors go, the Wollers are relatively fortunate. They have assets to protect and the "fresh start" of the discharge will allow them to eliminate a significant amount of unsecured debt. According to their schedules, they own a home worth about $172,000.00 and only owe about $81,000.00 on their mortgage. It appears that both Darrell's semi-tractor and another vehicle (a 1999 Dodge Durango) are unencumbered. They have a modest amount of household goods and clothing and small life insurance policies. In addition to the

annuity which is the subject of the trustee's objection, Rita also has a 401(k) account with a balance of about $31,000.00.

They owed approximately $164,000.00 in unsecured debt as of the petition date. Prior to the filing, there were at least five judgments taken against them in the approximate total amount of $66,000.00. The earliest judgment appears to have been entered in September of 2008. The most recent judgment was entered in April of 2011, about three months before the filing. The filing was prompted by the fact that their financial situation had grown more difficult. Creditors garnished Rita's wages and one judgment holder scheduled a supplementary proceeding in aid of execution which Darrell failed to attend. Rita had previously inherited 40 acres of vacant land from her father and she acknowledges that she did not want to lose it to creditors. In July of 2009, she sold the land and received approximately $62,000.00. The money was deposited into her attorney's trust account, where it remained for approximately 18 months. A portion of the money was used to pay some creditors and buy a truck for Darrell. In March of 2011, she used the balance of the money to fund the annuity.

Some observers might be troubled by the fact that the Wollers hope to protect almost $200,000.00 in assets even as they extinguish $164,000.00 in unsecured debt through their bankruptcy discharge.[1] When Congress enacted the bankruptcy code in 1978, one of the centerpieces of the legislation was the idea that it was designed to provide debtors with a "fresh start." Subsequent legislative enactments, most notably the so-called Bankruptcy

---

1. The total of exempt assets includes the approximately $90,000.00 in equity in their home (protected by Wisconsin's homestead exemption), the $31,000.00 in Rita's 401(k) (protected by Wisconsin's exemption for retirement benefits), their life insurance policies (totaling about $8,000.00 and protected by the exemption for life insurance), and the 1999 Dodge Durango (valued at $3,775.00). The trustee has not objected to these exemptions. He *has* objected to additional exemptions which total approximately $70,000.00.

Abuse Prevention and Consumer Protection Act of 2005, have often hampered the realization of that ideal. Nonetheless, it remains true that a central purpose of the bankruptcy code is to provide a procedure by which debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

Exemption laws are an essential component to the achievement of that new opportunity, and debtors like the Wollers—people in difficult financial straits who actually have resources to protect—are the most likely candidates for a successful fresh start. As this Court has observed in another context, the amount of money the debtors hope to shield from creditors is far less relevant than the manner in which they go about doing so. *Cirilli v. Bronk (In re Bronk)*, 444 B.R. 902, 911 (Bankr. W.D.Wis.2011) ("This Court has been reluctant to regard the amount claimed exempt as much more than a footnote, at least as long as the claim falls within the limits established by the Wisconsin legislature."). With these principles in mind, the Court will now turn to the specific objections raised by the trustee.

## I. The Semi–Tractor as Business Property

The debtors listed Darrell's semi-tractor as community property in their schedules and claimed it as exempt business property under Wis. Stat. § 815.18(3)(b), which permits the debtors to claim "equipment, inventory, farm products and professional books used in the business of the debtor." [2] The trustee contends that the semi-tractor is a "motor vehicle" and not "equipment." [3] He argues that the semi-tractor cannot be claimed as business property because the legislature provided a specific exemption for motor vehicles, did not include vehicles in the definition of "equipment," and did not specify vehicles in the list of items which can be exempted as business and farm property.

The statute defines equipment as "goods used or bought for use primarily in a business," while a motor vehicle is defined as a "self-propelled vehicle." *See* Wis. Stat. §§ 815.18(2)(f) and (m). As the trustee notes, the statute also provides that (at least for purposes of exemption law), the term "motor vehicle" does not include "equipment." *See* Wis. Stat. § 815.18(2)(m). The precise impact of this exclusion is unclear, although the trustee's interpretation appears to be that all "self-propelled vehicles" must be claimed as motor vehicles rather than as equipment. The Wollers, in contrast, suggest that it simply excludes equipment that might be attached to a vehicle—for example, a hydraulic plow attached to a truck.

Although it mentions motors and self-propulsion, the exemption statute does not define what constitutes a vehicle, which typically means that the Court

2. The current aggregate limit on this exemption is $15,000.00, or $30,000.00 in a joint case.

3. Under Wis. Stat. § 815.18(3)(g), joint debtors may exempt motor vehicles with an aggregate value of $8,000.00, plus any unused portion of the "consumer goods" exemption available under another subsection of the statute. The Wollers have already used roughly $4,000.00 of this exemption to cover a 1999 Dodge Durango valued at $3,775.00 and approximately $300.00 of equity in a 2002 Chevrolet TrailBlazer which was otherwise subject to a valid lien.

should apply the "common and approved usage." *See* Wis. Stat. § 990.01(1); *In re Laube,* 152 B.R. 260, 263 (Bankr.W.D.Wis. 1993). According to *Black's Law Dictionary,* a vehicle is "something used as an instrument of conveyance" and "any conveyance used in transporting passengers or things by land, water, or air." Likewise, the *American Heritage College Dictionary* defines a vehicle as "a device or structure for transporting persons or things; a conveyance." The everyday understanding of a "vehicle" is therefore seemingly broad enough to encompass not just cars and semi-tractors but planes, trains, and boats as well.[4]

Wis. Stat. § 990.01(1) also provides that "technical words and phrases" and words which have "a peculiar meaning in the law" shall be construed according to such meaning.[5] This Court doubts that the term "motor vehicle" has a sufficiently peculiar legal meaning to justify deviating from common parlance. *See In re Matthews,* 449 B.R. 833, 836 (Bankr.M.D.Ga. 2011) ("the term 'motor vehicle' is neither a term of art nor a technical term" and should be "defined consistent with its commonly understood meaning"). Still, it is worth noting that elsewhere the Wisconsin

legislature has defined a "vehicle" as "every device in, upon, or by which any person or property *is or may be* transported or drawn upon a highway." *See* Wis. Stat. § 340.01(74) (emphasis added).[6] The legislature has also seen fit to periodically exclude certain things from the realm of motor vehicles when necessary to achieve a specific purpose.[7]

Context and circumstance may also play a role. For example, the Wisconsin Supreme Court once held that a farm tractor—when operated on public roads—constituted a "motor vehicle" for purposes of certain statutes. *See Snorek v. Boyle,* 18 Wis.2d 202, 118 N.W.2d 132 (Wis.1962). In another case, the court concluded that a forklift which injured a plaintiff at a place "other than on a public highway" was *not* a motor vehicle for purposes of the state's direct-action statutes. *Rice v. Gruetzmacher,* 27 Wis.2d 46, 133 N.W.2d 401, 404 (Wis.1965) (the court recognized a "class of self-propelled-land-vehicles," such as a forklift, which were not motor vehicles under the direct-action statutes "unless being operated upon a highway at the time of [the] accident"). *See also Smedley v. Milwaukee Automobile Ins. Co.,* 12 Wis.2d

4. Indeed, according to Wikipedia—that massive Internet compendium of information—vehicles are "mobile machines" which are "designed or used to transport people or cargo," and include bicycles, cars, motorcycles, trains, ships, boats, and aircraft. *See* http://www.en.wikipedia.org/wiki/vehicle (last accessed May 31, 2012).

5. In this context, peculiar as in "specific," rather than "odd."

6. This definition is for purposes of title and vehicle registration. The same statute describes a *motor* vehicle as a vehicle which is self-propelled and incorporates all commercial motor vehicles and vehicles which are "propelled by electric power obtained from overhead trolley wires but not operated on rails." Wis. Stat. § 340.01(35). It also provides that snowmobiles and all-terrain vehi-

cles "shall only be considered motor vehicles for purposes made specifically applicable by statute." *Id.*

7. For example, Wis. Stat. § 344.01(2)(b) defines "motor vehicle" for purposes of financial responsibility and excludes "farm tractors, well drillers, road machinery or snowmobiles." However, chapter 346 of the Wisconsin *statutes,* which *deals* with the "rules of the road," reverts to use of the definitions found in Wis. Stat. § 340.01 (i.e., the one that does *not* exclude tractors, well drillers, or road machinery). In addition, Wis. Stat. § 346.02 provides that certain rules apply to snowmobiles, all-terrain vehicles, and "personal assistive mobility devices."

460, 107 N.W.2d 625 (Wis.1961) (a stationary truck with mounted hydraulic crane was not a motor vehicle unless driven on a public street). In *Snorek*, the court also noted that the meaning of "motor vehicle" could vary depending on the statutory context, stating that different sections of the law were "enacted at different times to achieve different results." 118 N.W.2d at 136.[8]

Clearly Darrell's semi-tractor is a vehicle—and a motor vehicle—as those terms are commonly understood because it is a self-propelled form of conveyance used for the transport of people or goods across the public roads. To the trustee, this means that the semi-tractor *must* be regarded as a motor vehicle for purposes of Wisconsin's exemption laws, while the debtors believe they can still claim it as "business property" because it is used in Darrell's business. The trustee's argument makes two presumptions: first, that something is *either* a motor vehicle *or* equipment; and second, if something qualifies as a motor vehicle, it cannot be considered equipment. The first contention may be true, but the second is far more problematic.[9] The statute says that motor vehicles do not *include* equipment. This is not quite the same thing as saying "No self-propelled vehicle can *be* equipment."

As the Wollers note, numerous cases treat tractors and similar items as equipment or tools of the trade, notwithstanding the fact that they might also fit under the ordinary concept of a "vehicle." *See Thompson*, 867 F.2d at 418 (describing a tractor as farm equipment or implement

for purposes of exemption); *In re Matthews*, 449 B.R. 833, 836 (Bankr.M.D.Ga. 2011) (tractor was not a motor vehicle but a tool of the trade because it was not ordinarily used to transport people or property on roads); *Cleaver v. Warford (In re Cleaver)*, 407 B.R. 354 (8th Cir. BAP 2009) (debtor who claimed semi-tractor as motor vehicle was entitled to prove that it was a tool of the trade for lien avoidance purposes). A Minnesota bankruptcy court once concluded that debtors could exempt a semi-tractor under a Minnesota exemption for "tools, implements, machines, [and] instruments ... reasonably necessary in the trade, business, or profession of the debtor." *See In re Smith*, 68 B.R. 581 (Bankr.D.Minn. 1986). In doing so, the court concluded that the debtor was not precluded from seeking to exempt a vehicle as a professional "tool" or "instrument" even though there was a separate statutory exemption for motor vehicles. Instead, the court observed:

> Resolution of the question whether automobiles and trucks can be trade exemptions must be made upon the facts of each particular case; and the resolution should be based upon their connection with the particular trade or business, not upon their connection with an individual debtor. Thus, where the business is selling real estate, it is reasonable to conclude that an automobile is not reasonably necessary in the trade, even though it may be necessary to a salesperson in pursuing the trade. It is incidental to the trade. The business is

---

8. The court also interpreted "motor vehicle" according to its ordinary and accepted meaning, observing that the term was commonly used "to describe vehicles propelled by motor power on land, of the nature of the automobile, motor truck and motorcycle." *Snorek*, 118 N.W.2d at 136 (quoting *Gridley v. Carde-*

*nas*, 3 Wis.2d 623, 89 N.W.2d 286, 288 (Wis. 1958)).

9. As will be seen, resolution of this case does not require a precise delineation of the motor vehicle exemption, and the Court declines to make the attempt.

selling real estate, not driving an automobile.

*Id.* at 583.

Other cases also illustrate that the treatment of vehicles as tools of the trade or "implements" is often tied to whether the vehicle in question is necessary to the performance of the particular profession. For example, a plumber's van did not fall within the protection of the Minnesota trade exemption because the van did not assist the debtor "in the actual performance of his plumbing work" but merely provided the means by which he traveled to work sites. *In re Johnson*, 160 B.R. 613 (Bankr. D.Minn.1993). Attempts by debtors to claim vehicles as "tools of the trade" for lien avoidance purposes are frequently rejected when the vehicles are used solely for commuting to a workplace. *See Johnston v. Barney*, 842 F.2d 1221 (10th Cir. 1988); *In re Parker*, 40 B.R. 490 (Bankr. N.D.Ala.1984); *In re Ramey*, 45 B.R. 562 (Bankr.W.D.Va.1984).[10] But trucks play an integral role in the job of a truck driver, as this Court's predecessor recognized shortly after the enactment of the bankruptcy code:

Certainly a debtor, in order to be an over-the-road trucker and continue in that field of trucking, would have to have the cab-tractor available to him to make his living as much as any printer would need his printing tools, or an electrician his electrical tools, or any other mechanic the tools used by him in making a living.

*In re Pockat,* 6 B.R. 24, 25 (Bankr. W.D.Wis.1980).[11]

■■■■■ As the trustee notes, the Wisconsin business property exemption does not specifically reference vehicles. However, this absence seems easily explained. The exemption statute simply defines equipment as "goods used or bought for use primarily in a business." *See* Wis. Stat. § 815.18(2)(f).[12] The term "goods" is a catchall, consisting of all tangible or movable personal property. *See* Wis. Stat. § 402.105(1)(c) (goods are "all things ... which are movable at the time of identification to the contract for sale"); Wis. Stat. § 409.102(ks) (goods are "all things that are movable when a security interest attaches"); *GFI Wisconsin, Inc. v. Reedsburg Utility Comm'n,* 440 B.R. 791, 798 (W.D.Wis.2010). Under these definitions,

---

**10.** Even when a vehicle is used in the performance of official duties, it may not be a tool of the trade. *See Bank of Edgar v. Nowak (In re Nowak),* 48 B.R. 290 (W.D.Wis.1984) (the court could not "envision a 1980 Oldsmobile Cutlass as being anything other than a motor vehicle," notwithstanding the fact that the debtor worked as a traveling salesman). On the other hand, vehicles which feature specialized equipment might be a tool of the trade. *In re Dempsey,* 39 B.R. 561 (Bankr. E.D.Pa.1984) (customized van used for the buffing of floors could be a tool of the trade).

**11.** As with many of these cases, the debtor in *Pockat* utilized the federal exemption for "implements" or "tools of the trade" and the case involved the question of lien avoidance under 11 U.S.C. § 522(f). As such, it is not controlling as to the interpretation of Wisconsin's exemptions, even though the basic observa-

tion about the importance of a semi-tractor to a truck driver is well taken.

**12.** Intriguingly, two other components of the business property exemption-farm products and inventory—are defined by relation to the Uniform Commercial Code. *See* Wis. Stat. §§ 815.18(2)(i)and (j). The UCC defines equipment somewhat vaguely as goods *other than* inventory, farm products, or consumer goods. *See* Wis. Stat. § 409.102(i). Apparently, the Wisconsin legislature decided that the exemption statute should clearly identify that "equipment" requires a business use, rather than simply rely upon the UCC's negative inference (under the UCC, consumer goods are held for personal, family, or household purposes; by definition, "equipment" must therefore be held for a non-consumer purpose).

whether some item of tangible personal property qualifies as equipment depends upon whether it is actually used in a business. Given that vehicles, self-propelled or otherwise, are both tangible and movable, they are "goods." Goods used in a business may be considered equipment; as such, it seems logical to say that under the right circumstances a self-propelled vehicle might well be characterized as "equipment."

■ In fact, one possible explanation for the exclusion of "equipment" from the definition of "motor vehicle" is that items which might otherwise fall under the common definition of "vehicles" should be exempted under the business property exemption when they are held primarily for business use.[13] Whatever the intent, the statute does not automatically prohibit debtors from exempting vehicles under the business property exemption. The exemptions are to be liberally construed, and debtors are free to arrange their affairs to take best advantage of the exemption laws, much as one may arrange matters to minimize tax liability. *See In re Smiley*, 864 F.2d 562, 567 (7th Cir.1989) (courts should not prohibit a debtor's "full use of exemptions within the limits of the law"). Courts should not "write exemptions into the statutes," *see Schwanz*, 223 N.W.2d at 900, but the idea of liberal construction means that the only restrictions on the exemptions should be those found in the statutes themselves.

■ For example, in *Laube* the court liberally construed the Wisconsin exemp-

tions and the definition of a "dwelling" in allowing a semi-tractor to be claimed as a *homestead* because the debtor demonstrated that he lived in it. 152 B.R. at 262–63. Whatever one may think of characterizing a semi-tractor as a homestead, there are certainly other motor vehicles (such as recreational vehicles or campers) which could easily qualify as a "dwelling" given the right set of circumstances. The idea that there may be some overlap between the exemptions, or that a particular item may qualify for different exemptions depending upon a specific set of facts, simply illustrates the individualized nature of exemption claims. As this Court has recognized previously, a debtor's right to an exemption depends upon the particular facts. *Lark*, 438 B.R. at 657. Here, the question is whether Darrell's truck qualifies as "equipment."

■ Wisconsin case law directs that when deciding whether items are held "primarily" for personal, family, or household use (as opposed to a "business" purpose), courts are obligated to consider the actual use of the items. *See Tralmer Sales and Serv. v. Erickson*, 186 Wis.2d 549, 521 N.W.2d 182 (Wis.Ct.App.1994). As the previously cited case law indicates, in the context of vehicles this requires a distinction between those which have only occasional or incidental business usage (for example, the salesperson who uses a personal vehicle and receives a mileage reimbursement) and those which are *consistently* (or almost exclusively) used for a

---

**13.** Perhaps the legislature contemplated that the motor vehicle exemption would be generally used by debtors to protect their means of personal transportation or other self-propelled vehicles held for personal use. Such an interpretation would be consistent with the fact that any unused portion of the *consumer goods* exemption found in Wis. Stat. § 815.18(3)(d) may be added to the motor vehicle exemption. *See* Wis. Stat. § 815.18(3)(g). Regardless, the exclusion of "equipment" from the definition of "motor vehicle" does not justify a corresponding limitation on the definition of "equipment." The only statutory restriction on the type of "goods" which can be "equipment" is the actual use of the item.

business purpose (tractors, forklifts, and yes, potentially even semi-tractors). *Smith,* 68 B.R. at 583; *Johnston,* 842 F.2d at 1222. In this case, the semi-tractor is used exclusively for Darrell's trucking business. There is no indication that the Wollers use the semi-tractor for personal reasons (for example, trips to the grocery store, family vacations, or the like). The semi-tractor is not merely incidental to Darrell's business but is an inherent component of it. As the Minnesota court observed in *Smith.* "A trucker cannot truck without a truck." 68 B.R. at 584. Allowing Darrell to claim his truck as exempt business property does not extend the exemption beyond what is allowed in the statute and is consistent with Wisconsin's stated public policy interest in construing the exemptions to allow debtors their "full benefit." *See* Wis. Stat. § 815.18(1).

That said, the Court notes that even if the law required treatment of the semi-tractor as a motor vehicle rather than business equipment, it appears that the debtors would be able to amend their motor vehicle exemption to protect their equity interest. The trustee cannot have it both ways: either the semi-tractor is "equipment" and may be exempted as business property, or it is a "motor vehicle." According to their schedules, they have only claimed $1,800.00 of their available consumer goods exemption. The joint remaining balance available to them under that exemption is $22,200.00. Pursuant to Wis. Stat. § 815.18(3)(g), the unused portion of the consumer goods exemption may be added to increase the aggregate exempt value of the motor vehicle exemption. Together, that amount is more than sufficient to exempt the value of the semi-tractor.[14]

## II. The Bank Account: Business or Personal?

The second disputed exemption is for the funds held in a bank account. Darrell is a truck driver and works as an independent contractor. His truck driving fees were deposited into one bank account and then transferred to another account used for personal or family expenses. Wis. Stat. § 815.18(3)(k) provides an exemption for depository accounts in the amount of $5,000.00, but "only to the extent that the account is for the debtor's personal use and is not used as a business account." The trustee contends that the bank account—which was apparently exclusively used for the deposit of Darrell's receipts from his profession—is a business account and cannot be exempted under this section.

As indicated previously, when deciding whether items are held "primarily" for personal, family, or household use (as opposed to a "business" purpose), courts are obligated to consider the actual use of the items. *See Tralmer Sales,* 521 N.W.2d at 188 (Wis.App.1994). The challenge here is that the first bank account was used only to temporarily hold Darrell's fees. The Wollers apparently never used it for any other purpose, and it seems more connected to Darrell's business than their personal financial affairs. Of course, it appears that the funds were quickly shifted into their family account and used for general living expenses. The trustee seems to suggest that since the funds were clearly derived from Darrell's trucking operation, the funds retain their "business" nature despite the transfer to the family account.

14. The Wollers claimed the semi-tractor as community property on their schedules and the trustee has not alleged that it should be regarded as Darrell's separate property. The fact that Rita has little, if any, involvement in Darrell's trucking business would seemingly have no bearing on whether she can claim a motor vehicle exemption in community property, even if it might impact her ability to claim a "business property" exemption.

Money, of course, is fungible and has no particular character in and of itself. *See, e.g., In re Sheridan,* 57 F.3d 627, 636 (7th Cir.1995); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez),* 421 B.R. 356, 378 (Bankr.S.D.Tex.2009). The key question in this context would appear to be the nature *of the account* rather than the funds themselves—after all, the exemption statute provides an exemption to the extent "the account is for the debtor's personal use."

■■■ The Court agrees with the trustee that this initial account appears to be business-related and would not qualify for exemption. Darrell did not use the account for personal use. He simply deposited his trucking fees into the account. In their schedules, the Wollers indicated that there was $2,175.00 in this account. In their briefs, they allege that on the date of filing there was actually only $100.00 in the account, as the balance had been previously transferred to their personal account in accordance with their customary practice. They have supplied the Court with a bank account statement supporting this contention. To the extent that the funds were held in a personal account on the date of filing (i.e., the second or transferee account), it appears the Wollers would be entitled to exempt them under Wis. Stat. § 815.18(3)(k). That account satisfies the statutory requirement that it is "for the debtor's personal use" as the money deposited into the account was principally used to pay general living expenses. The exemption of the business account is disallowed, but the trustee may only recover the amount actually in the account on the date of filing.

## III. Trucking Receipts as Net Income

■■■ The next objection relates to an exemption for $3,567.06 generated from Darrell's trucking operation. According to the debtors, this was the amount Darrell was owed for work performed prior to the bankruptcy filing. The debtors did not initially claim these amounts as exempt but have now done so. They believe that they can claim this amount as exempt under Wis. Stat. § 815.18(3)(h), which permits debtors to exempt 75% of their net income for "each one week pay period." Under Wis. Stat. § 815.18(2)(n), "net income" is defined as gross receipts "paid or payable for personal services or derived from rents, dividends, or interest." The trustee contends that this statute protects wages, not an account receivable owed to an independent contractor.

As with the discussion of the meaning of a motor vehicle, it is necessary to consider the "common and approved usage" of the phrase "personal services." *See* Wis. Stat. § 990.01(1). A personal service is "an act done personally by an individual." Black's Law Dictionary 1180 (8th ed. 1999). It is also described as "an economic service involving either the intellectual or manual personal effort of an individual, as opposed to the salable product of the person's skill." *Id.* One online dictionary describes the concept of personal services in the context of contract law as "the talents of a person which are unusual, special or unique and cannot be performed exactly the same by another." [15]

With their brief the debtors filed a copy of a document titled "accounts payable open invoice report" from Goeman Trucking, Ltd. This report appears to cover the two-week period prior to the filing. It shows two invoice dates for Darrell's

---

**15.** "Personal Services," http://legal-dictionary.thefreedictionary.com/personal+ services (last accessed June 8, 2012).

trucking work: namely, a $1,975.00 amount due on June 24 and $3,383.56 due on June 30. There are also two separate charges in the amount of $910.00 each which reduced the total amount the company owed Darrell to the $3,567.06 amount ultimately at issue. According to the debtors, no deductions are made for state or federal income tax withholding from the sums Darrell is paid; he is simply paid the gross amount of the invoiced freight charges, less whatever other charges or deductions are made by the trucking company. As indicated, the debtors have asserted that this entire amount is exempt, although they have not indicated how they calculated the precise amount protected by the statute (as only 75% of the "gross receipts" which are "paid or payable" are exempt).[16]

The debtors contend that the statute does not limit "income" to "wages" from employment. Certainly the statute includes passive sources of income such as rents, dividends, or interest. As the debtors note, Wis. Stat. § 812.18(2m)(b) provides that in the context of a garnishment action, the garnishee is expected to pay the defendant "any exempt amount" under Wis. Stat. § 815.18(3)(h) from the proceeds of crops, livestock, dairy products, or the like. The debtors argue that if a dairy farmer is entitled to exempt 75% of his weekly milk check from garnishment, a trucker ought to be able to exempt his freight charges. But at the same time it must be acknowledged that to the extent that the garnishment statute protects *non-*

*employment* income, it is limited by its own terms to "the sale of crops, livestock, dairy products or another product grown or produced by a person or by his or her minor children." *See* Wis. Stat. § 812.18(2m)(b). This means that to the extent the two statutes should be read together, there is clear statutory support for a net income exemption which covers the following things: (i) receipts payable for "personal services"; (ii) receipts derived from rents, dividends, or interest; and (iii) the proceeds of the sale of crops, livestock, dairy products, or another similar product.

The debtors cite several cases in support of the proposition that exemption provisions like Wisconsin's "net income" exemption cover the income of independent contractors as well as employees. For example, in one recent case an Arizona bankruptcy court concluded that the state's exemption scheme protected compensation for personal services "regardless of whether it is in the form of wages earned by an employee or a commission earned by an independent contractor." *In re Roetman,* 405 B.R. 336, 339 (Bankr.D.Ariz.2009). Arizona law effectively created an exemption for 75% of a debtor's "disposable earnings," and that phrase was statutorily defined as "that remaining portion of a debtor's wages, salary or compensation for his personal services, including bonuses and commissions." The court concluded that the statute did not require an employment relationship and that real estate

16. Given that Darrell operates as an independent contractor, it appears he is personally responsible for payment of taxes and that there are no "federal and state tax deductions required by law to be withheld" from his gross receipts. However, the nature of the two offsets (which are cryptically referenced as "T–CHEK" on the invoice report) may be relevant in determining the true "gross receipts" payable to Darrell. If, for example, part of Darrell's contract requires that he pay certain business-related charges, it would seem that the amount "payable" to him would be $3,567.06 and the debtors could only exempt 75% of that amount (i.e., $2,675.30). For purposes of this decision, the question is whether the Wollers may claim any of this money as "net income," not the precise calculation of the exemption.

**900**

commissions received by the debtor could qualify for exemption.

Obviously, the Wisconsin statute varies linguistically from the Arizona statute. For purposes of the present dispute, Wis. Stat. § 815.18(2)(n) defines net income simply as "gross receipts" which are paid or payable for "personal services." One has no doubt that Darrell was owed the invoiced amount as of the date of filing (rendering the money "payable"). The statute does not define "gross receipts," although that is presumably a reference to the total amount received by the debtor. As indicated previously, "personal services" relate to the efforts (or labor) of an individual. Darrell's individual labor created the funds paid by the trucking company. Under the facts of this case, the Court finds it appropriate to view this as "net income." The exemption is granted, although the debtors are obligated to justify their calculation of the total "net income" which can be exempted.[17]

## IV. The Annuity

Finally, the trustee contends that the exemption for the annuity should be denied. The Wollers acknowledge that the annuity was funded with money received from the sale of real property Rita inherited from her father. The funds were held in her attorney's trust account for approximately 18 months before they were transferred into the annuity. The annuity was funded only a few months before the case was filed. The trustee objects to the exemption because the annuity does not provide benefits "by reason of age, illness, disability or death" as required by the statute, and that the exemption should be limited to $4,000.00 because the annuity was created within two years of the bankruptcy filing. In the alternative, the trustee says that the debtors obtained the annuity through fraudulent conduct and the exemption should be denied.

■ Wis. Stat. § 815.18(3)(j) provides an exemption for retirement benefits that allows debtors to exempt "assets held or amounts payable" under anything "similar" to a retirement plan which provides benefits "by reason of age, illness, disability, death or length of service." The statute expressly includes annuities. It also states that the plan or contract must comply "with the provisions of the internal revenue code." The trustee contends that the annuity in this case is not intended to provide benefits for retirement, but rather simply serves as a place to "park" the funds during bankruptcy. He also argues that the annuity does not provide benefits "by reason of" age, illness, or the like. This Court has previously ruled that an annuity qualifies for the exemption under Wis. Stat. § 815.18(3)(j) as long as it satisfies the general provisions of the internal revenue code regarding tax-deferred status. *See In re Bruski*, 226 B.R. 422 (Bankr.W.D.Wis.1998); *In re Vangen*, 334 B.R. 241 (Bankr.W.D.Wis.2005).

The Wollers note that this annuity complies with section 72 of the IRC, a fact that the trustee does not appear to dispute. It is also structured to provide payments over time and is envisioned as a mechanism to provide the debtors with something for later in life. It is a retirement annuity that satisfies the requirements of the IRC regarding the deferral of taxes. The Wisconsin legislature did not expressly mandate compliance with the requirements of §§ 401–409 of the IRC (which cover pension, profit-sharing, stock bonus,

---

**17.** When the matter was argued, the Court initially considered this to be an account receivable. Further review of the nature of "personal services," however, justified reconsideration and a decision that the debtors were entitled to the exemption.

and other retirement plans), and the Court will not write such a requirement into the exemption statute. *Bruski*, 226 B.R. at 425: *see also In re Bogue*, 240 B.R. 742, 746 (Bankr.E.D.Wis.1999) ("The Wisconsin retirement benefits exemption statute does not limit its application to 'traditional' retirement plans, 'qualified' annuities, or annuities which comply with IRC §§ 401–409."). Given that phrases like "by reason of" or "on account of" can have different meanings, it is sufficient that the annuity was acquired with retirement in mind and that it contemplates the payment of benefits structured over a period of time. *Bogue*, 240 B.R. at 749.

■ Further, this Court has also rejected the idea that an annuity which qualifies under § 815.18(3)(j) is subject to the limitations found in § 815.18(3)(f). *See Cirilli v. Bronk (In re Bronk)*, 444 B.R. 902 (Bankr.W.D.Wis.2011). The Wisconsin legislature added these modifications to § 815.18(3)(f) in 2003. The statute now provides an exemption for any "unmatured life insurance or annuity contract owned by the debtor" not to exceed $150,000.00 in value, but limits the exemption to $4,000.00 if the annuity contract was issued less than 24 months before the applicable date. The question, of course, is whether this provision—as opposed to § 815.18(3)(j)—covers the Wollers' annuity. In *Bronk*, this Court concluded that the legislature intended the modification to provide an *additional* exemption, and that annuities which qualified under § 815.18(3)o were not subject to the $4,000.00 limitation. Although that issue remains pending on appeal, the Court finds no reason to deviate from that conclusion at the present time. As such, the Court therefore agrees with the debtors that the annuity technically qualifies for a full exemption.

■ However, an otherwise valid exemption may still be denied under Wis.

Stat. § 815.18(10) if the debtor is found to have "procured, concealed, or transferred assets with the intention of defrauding creditors." *See In re Vangen*, 334 B.R. 241, 246 (Bankr.W.D.Wis.2005); *In re Przybylski*, 340 B.R. 624 (Bankr.E.D.Wis. 2006). The trustee argues that the Wollers' exemption of the annuity should be denied because they engaged in fraudulent conduct. The annuity was purchased using the proceeds from the sale of Rita's real estate. The Wollers admit that the proceeds of the sale were held by an attorney for some 18 months while several judgments were entered against them and Rita's wages were garnished. The trustee notes that Darrell failed to attend a scheduled supplemental proceeding and alleges that the Wollers sought to create the impression that they did not have any non-exempt assets even as they used some of the money from the real estate sale to pay creditors and purchase a truck.

■ In *Bronk*, this Court reviewed the case law regarding the denial of a debtor's exemption claims. Under relevant Seventh Circuit precedent, so-called exemption planning only rises to the level of fraudulent conduct if there is evidence that the debtor committed some act "extrinsic to the conversion" which hinders, delays, or defrauds creditors. *In re Smiley*, 864 F.2d 562, 567 (7th Cir.1989). What this means is that the debtors must have somehow engaged in conduct which forestalled or potentially deceived creditors, buying time while they surreptitiously converted non-exempt assets into exempt ones. The fact that a debtor engages in exemption planning while faced with financial distress is not itself evidence of fraudulent conduct. *See Murphey v. Crater (In re Crater)*, 286 B.R. 756, 765 (Bankr.D.Ariz.2002) (noting that to rule otherwise "would mean that prospective debtors could engage in exemp-

tion planning only up until the point where it appeared they might need to do so").

 After all, the use of exemptions is at least a legitimate form of asset protection, and debtors should only be penalized when they go beyond taking advantage of the exemption laws themselves. In *Smiley*, for example, the debtor was able to forestall creditors from filing an involuntary petition against him by misrepresenting both the value of his assets and his intentions; this gave him the breathing room necessary to establish residency in Kansas and claim the Kansas homestead exemption. This conduct—and a pattern of "sharp dealing"—justified a finding that he acted to hinder or delay creditors. 864 F.2d at 568–69. In *Village of San Jose v. McWilliams*, 284 F.3d 785, 794 (7th Cir. 2002), the court concluded that the debtors "attempted to create the appearance that they no longer owned the property" when they transferred it to third parties. And in *In re Adeeb*, 787 F.2d 1339, 1341 (9th Cir.1986), the debtor transferred title of his real estate for no consideration to "third parties who could be trusted"—in other words, to people who could be trusted to give it back later. As this Court observed in *Bronk*, there is a difference between creating a smokescreen that makes it difficult for creditors to realize on their claims and merely attempting to take advantage of legally available exemptions. 444 B.R. at 913.

While the trustee raises some questions about the Wollers' conduct, the Court finds that there is not sufficient evidence of "extrinsic" activity which was actually intended to hold creditors at bay while the Wollers purchased the annuity. They admit that the sale proceeds were held by a lawyer for about 18 months before the money was placed in the annuity. But there is no evidence that they made any attempt to hide the sale from creditors or to forestall creditors from inquiring about the funds. In *First Tex. Sav. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir.1983), the debtor's questionable exemption planning occurred only *after* he negotiated with his creditors "to be free of payment obligations until the following year." There is no evidence that the Wollers engaged in subterfuge or smokescreens which delayed their creditors, or that they engaged in any particular negotiation with creditors at all. They simply converted a nonexempt asset into one which qualified for an exemption under Wisconsin law. As such, the exemption will be allowed.

Accordingly,

IT IS ORDERED that the trustee's objection is denied as to the exemption of the semi-tractor, the net income from Darrell's trucking services, and the annuity. The objection is sustained as to the business account, although the trustee may only recover the amount actually in the business account on the date of filing.